1    Casey M. Nokes (State Bar No. 240992)
      KIRKLAND & ELLIS LLP
2    555 California Street
      San Francisco, CA 94104
3    Telephone: (415) 439-1400
      Facsimile: (415) 439-1500

4

5    Jonathan C. Bunge (*pro hac vice* pending)
      Leonid Feller (*pro hac vice* pending)
6    Alec Solotorovsky (*pro hac vice* pending)
      KIRKLAND & ELLIS LLP
      300 North LaSalle Street
7    Chicago, Illinois  60654
      Telephone: (312) 862-2000
8    Facsimile: (312) 862-2200

9    Attorneys for Defendants,
      UNIVERSITY OF PHOENIX
10   and APOLLO GROUP, INC.

11

**UNITED STATES DISTRICT COURT**

12

**EASTERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, *ex rel.* DEREK HOGGETT and TAVIS GOOD, | CASE NO. 2:10-CV-02478-MCE-KJN |
| | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| Plaintiff, | Complaint Filed:  September 15, 2010 |
| vs. | Judge:  Honorable Morrison C. England, Jr. |
| UNIVERSITY OF PHOENIX, APOLLO GROUP, INC., and DOES 1 through 100, Inclusive, | Hearing Date:  August 25, 2011 |
| Defendants. | Time:  2:00 p.m. |
| | Courtroom:  7 |

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

I.      THE UNIVERSITY OF PHOENIX. ................................................................... 2

II.     THE HIGHER EDUCATION ACT, THE INCENTIVE COMPENSATION BAN, AND ITS SAFE HARBOR PROVISIONS. ............................................................... 2

III.    THE *HENDOW* LITIGATION. .......................................................................... 3

IV.   RELATORS HOGGETT AND GOOD. ............................................................... 5

ARGUMENT ..................................................................................................................... 6

I.      STANDARD FOR DECISION. ........................................................................... 6

II.     THE COMPLAINT FAILS TO SATISFY FED. R. CIV. P. 9(b) AND *IQBAL*. ......... 7

       A.    Relators' Complaint Does Not Satisfy Rule 9(b). ..................................... 7

            1.    The Complaint Is Devoid Of Any Specificity. ............................. 7

            2.    Hoggett And Good Fail To Plead Adequately When And Where Any Alleged Misconduct Occurred. ................................. 8

            3.    The Complaint Does Not Adequately Plead That UOPX's Recruiter Compensation Program Falls Outside Available Higher Education Act Safe Harbors ............................................................................. 10

       B.    Relators' Complaint Does Not Satisfy *Iqbal's* Plausibility Standard. .................... 11

            1.    Bare Allegations Of Improper Motive Or Policy Do Not Give Rise To A Plausible Entitlement To Relief. ......................................... 12

            2.    Relators' Sole Specific Allegation Is Unexplained And Irrelevant. .......... 13

III.    THE STATE LAW CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS, AND SHOULD BE DISMISSED FOR LACK OF JURISDICTION ... 14

       A.    Relators' State Law Claims Are Barred By The Statute Of Limitations. .............. 14

       B.    Relators' State Law Claims Should Be Dismissed For Lack Of Jurisdiction ........ 15

CONCLUSION ................................................................................................................ 17

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ................................................................................ passim

*Beazley v. Fujii,*
  216 Fed. Appx. 701 (9th Cir. 2007) ....................................................................... 7

*Bly-Magee v. California,*
  236 F.3d 1014 (9th Cir. 2001) ............................................................................... 6

*Cafasso U.S. ex rel. v. General Dynamics C4 Systems, Inc.,*
  637 F.3d 1047 (9th Cir. 2011) ........................................................................... 6, 8

*Colony Cove Properties, LLC v. City of Carson,*
  640 F.3d 948 (9th Cir. 2011) ................................................................................. 7

*Debro v. Los Angeles Raiders,*
  92 Cal. App. 4th 940 (2001) ................................................................................ 14

*E & E Co., Ltd. v. Kam Hing Enterprises, Inc.,*
  No. C-08-0871, 2009 WL 482240 (N.D. Cal. Feb. 25, 2009) ............................... 9

*Ecology Center, Inc. v. Austin,*
  430 F.3d 1057 (9th Cir. 2005) ............................................................................... 7

*Faragi v. Provident Life and Acc. Inc. Co.,*
  161 Fed. Appx. 649 (9th Cir. 2005) ....................................................................... 7

*Gold v. Morrison-Knudsen Co.,*
  68 F.3d 1475 (2d Cir. 1995) .................................................................................. 6

*Herman Family Revocable Trust v. Teddy Bear,*
  254 F.3d 802 (9th Cir. 2001) ............................................................................... 16

*Jablon v. Dean Witter & Co.,*
  614 F.2d 677 (9th Cir. 1980) ............................................................................... 15

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ............................................................................. 14

*Moor v. Alameda Cty.,*
  411 U.S. 693 (1973) ............................................................................................. 16

*Moss v. U.S. Secret Service,*
  572 F.3d 962 (9th Cir. 2009) .......................................................................... 12, 13

*New Mexico ex rel. National Education Ass'n of New Mexico, Inc. v. Austin Capital Mgmt. Ltd.,*
  671 F. Supp. 2d 1248 (D. N.M. 2009) ................................................................. 16

*S.M. ex rel. Allen v. West Contra Costa County Unified School Dist. Financing Corp.,*
  No. C 07-5829, 2009 WL 1033826 (N.D. Cal. April 16, 2009) ............................ 9

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*,
 806 F.2d 1393 (9th Cir. 1986) ................................................................................ 6

*State ex rel. Hindin v. Hewlett-Packard*,
 153 Cal. App. 4th 307 (2007) ............................................................................... 14

*State ex rel. Service Disabled Veterans Telecommunications v. MCI Telecommunications Corp.*,
 185 F.3d 868 (9th Cir. 1999) ................................................................................ 16

*U.S. ex rel. Bott v. Silicon Valley Colleges*,
 262 Fed. Appx. 810, 811 (9th Cir. 2008) ............................................................. 11

*U.S. ex rel. Ebeid v. Lungwitz*,
 616 F.3d 993 (9th Cir. 2010) ................................................................................ 10

*U.S. ex rel. Hendow v. University of Phoenix*
 296 Fed. Appx. 587 (9th Cir. 2008) ....................................................................... 4

*U.S. ex rel. Hendow v. University of Phoenix*,
 461 F.3d 1166 (9th Cir. 2006) ........................................................................... 2, 4

*U.S. ex rel. Jajdelski v. Kaplan, Inc.*,
 No. 2:05-CV-1054-KJD-GWF, 2011 WL 2669485 (D. Nev. July 7, 2011) ......... 8, 9, 10

*U.S. ex rel. Killingsworth v. Northrop Corp.*,
 25 F.3d 715 (9th Cir. 1994) .................................................................................. 16

*U.S. ex rel. Lee v. Corinthian Colleges*,
 No. CV 07-1984 PSG (MANx) 2009 WL 4730890 (C.D. Cal. Dec. 4, 2009) ............. 11

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*,
 243 F.3d 1181 (9th Cir. 2001) ................................................................................ 5

*U.S. ex rel. Pilecki-Simko v. The Chubb Institute*,
 No. 06-3562, 2010 WL 1076228 (D. N.J. Mar. 22, 2010) .................................... 11

*U.S. ex rel. St. John Lacorte v. Smithkline Beecham Clinical Labs*,
 149 F.3d 227 (3d Cir. 1998) ................................................................................... 5

*United States ex rel. Capella v. United Technologies Corp.*,
 No. 3:94-CV-2063 (EBB), 1999 WL 464536 (D. Conn. June 3, 1999) ................... 5

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
 578 F.3d 1016 (9th Cir. 2009) ............................................................................... 7

**Statutes**

20 U.S.C. § 1094(a)(20) ............................................................................................ 2, 4

28 U.S.C. § 1332 ......................................................................................................... 16

28 U.S.C. § 1367(c)(3) ................................................................................................ 16

31 U.S.C. § 3730(b)(5) ................................................................................................. 5

34 C.F.R. § 668.14(b)(22)(i) ............................................................................... 3

34 C.F.R. § 668.14(b)(22)(ii)(A) ....................................................................... 3

34 C.F.R. §668.14(b)(22) .................................................................................. 4

Cal. Gov't Code § 12652(c)(10) ........................................................................ 5

Cal. Gov't Code § 12654(a) ............................................................................. 14

**Other Authorities**

*Apollo Group Fined,*
    Education Week, Sept. 29, 2004 .................................................................. 15

Betsy Vereckey,
    *Apollo trades lower on fraud lawsuit,* Associated Press, Sept. 6, 2006......... 14

*Court refuses to step into case involving student recruitment at university,*
    Associated Press, April 23, 2007 ............................................................... 15

*Critical federal report on for-profit University of Phoenix leads to $9.8 million fine,*
    Associated Press, Sept. 14, 2004 ............................................................... 15

Dawn Gilbertson,
    *Court Revives U. of Phoenix Fraud Lawsuit,* Arizona Republic, Sept. 6, 2006 ........... 14

Eryn Brown,
    *Can For-Profit Schools Pass an Ethics Test?,* New York Times, Dec. 12, 2004........... 15

*For-profit university pays up,*
    Dallas Morning News, Sept. 14, 2004 .......................................................... 15

Goldie Blumenstyk,
    *U. of Phoenix Uses Pressure in Recruiting, Report Says,* Chronicle of Higher Education, Oct. 8, 2004........................................................................................... 15

Henry Weinstein,
    *School asks judge to dismiss fraud case,* Los Angeles Times, June 26, 2007 ............... 15

Henry Weinstein,
    *School's enrollment fraud case heads to trial,* Los Angeles Times, Aug. 21, 2007 ......... 15

Henry Weinstein,
    *University of Phoenix case to stand,* Los Angeles Times, April 24, 2007..................... 15

Henry Weinstein,
    *University of Phoenix Faces Fraud Suit,* Los Angeles Times, Sept. 6, 2006 ............... 14

John Hechinger,
    *Will Apollo's Bad Report Card Get Its Shares Grounded?,* Wall Street Journal, Sept. 15, 2004... 15

Lisa Krieger,
    *Lawsuit: University of Phoenix breached ethics, laws,* San Jose Mercury News, June 23, 2007 .. 15

Martin Van Der Werf and Goldie Blumenstyk,
*Federal Appeals Court Reinstates False-Claims Lawsuit Against U. of Phoenix,* Chronicle of
Higher Education, Sept. 15, 2006 ....................................................... 15

Michael Rothfeld,
*Gov. gets heat on schools,* Los Angeles Times, Sept. 9, 2007 ......................................... 15

Patrick May,
*Fraud case heads to trial,* San Jose Mercury News, Aug. 21, 2007 ............................... 15

Peg Brickley,
*Court Revives Whistleblower Suit Vs Univ Of Phoenix,* Dow Jones Newswires, Sept. 5, 2006..... 14

Sam Dillon,
*Troubles Grow For a University Built on Profits,* New York Times, Feb. 11, 2007 ................... 15

*School fine may foretell crackdown,*
Chicago Tribune, Sept. 15, 2004 ....................................................... 15

*Student-Recruitment Tactics Blasted By Feds; Univ. Of Phoenix Audit Leads To $9.8 Mil Fine,*
Arizona Republic, Sept. 14, 2004 ....................................................... 15

*U.S. Supreme Court refuses to review Apollo case,*
Reuters, April 24, 2007 ....................................................... 15

*US Dept Of Education Fines University Of Phoenix $9.8 Mln,*
Dow Jones Newswires, Sept. 14, 2004 ....................................................... 15

## INTRODUCTION

Relators Derek Hoggett and Tavis Good seek to relitigate a case that has already been resolved through a settlement in which defendant University of Phoenix ("UOPX") paid $78.5 million. The central claim here is that UOPX falsely certified its compliance with the Higher Education Act's incentive compensation ban in order to obtain government funding. (Compl. at ¶ 1). But that claim is lifted verbatim from *United States ex rel. Hendow v. University of Phoenix*, No. 2:03-cv-0457-GEB-DAD (E.D.Cal.) (Burrell, J.) – a case that UOPX and the United States settled in December 2009. (*Hendow* Settlement Agreement, attached hereto as Ex. 1). The present Complaint is nothing more than a stripped-down version of the prior *Hendow* complaint, making the same claims but including none of the detailed factual allegations that appeared in the prior pleading.[1] Instead, the relators now attempt to plead around the *Hendow* Settlement Agreement's broad releases, and their preclusive effect, by limiting their present federal claims to the brief time-period after the *Hendow* settlement and by adding state law counts under the California False Claims Act ("CFCA") purporting to cover the past ten years. The result is a Complaint containing no credible allegations of wrongdoing, which should be dismissed for at least two sets of independent reasons:

*First*, both the post-*Hendow* federal claims (Counts I and II) and the CFCA claims (Counts III and IV) fail to satisfy (i) Rule 9(b) of the Federal Rules of Civil Procedure, requiring that fraud claims (including False Claims Act suits) be pled with particularity, and (ii) the plausibility standard required by *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009). Although the Complaint alleges wide-ranging violations of law, it makes no specific factual allegations of wrongdoing whatsoever. Every averment is a generality and relators never specify the time, place, parties to or content of any alleged false representation. That alone is a sufficient reason to dismiss this case.

*Second*, in addition to falling short of basic pleading standards, the Complaint's state law claims should be dismissed because: (i) the CFCA's three-year statute of limitations forecloses the state law claims; and (ii) the Court should decline to exercise supplemental jurisdiction over the state

---

[1] Certain similarities strongly suggest that the present Complaint was created by electronically writing over the second amended *Hendow* complaint. The signature line on the current Complaint is erroneously dated 2004, the same year that the second amended *Hendow* complaint was filed. (Compl. at 11). And much of the two documents are word-for-word identical. (*Compare, e.g., Hendow* Compl. at ¶ 1, attached hereto as Ex. 2, to Compl., ¶ 1, Doc. No. 1).

1   law claims once the federal claims are set aside.

2          For all these reasons, defendants respectfully request that relators' Complaint be dismissed.

3                                      **BACKGROUND**

4   **I.      THE UNIVERSITY OF PHOENIX.**

5          UOPX, a subsidiary of defendant Apollo Group, Inc., is a postsecondary educational

6   institution licensed to provide educational programs in 43 states.  (Compl. at ¶¶ 12, 13; Ex. 1 at ¶ A).

7   UOPX is the nation's largest private university, offering more than 100 degree programs at more

8   than 200 locations.  (*Id.*).  UOPX participates in various student aid programs, including federal

9   student aid programs governed by Title IV of the Higher Education Act of 1965.  (*Id.*).

10  **II.     THE HIGHER EDUCATION ACT, THE INCENTIVE COMPENSATION BAN, AND
11           ITS SAFE HARBOR PROVISIONS.**

12         Relators claim that UOPX has violated the Higher Education Act.  (Compl. ¶ 1).  Enacted in

13  1965, the Higher Education Act created various grant and loan programs designed to help students

14  obtain a postsecondary education.  These funds are administered through individual higher education

15  institutions, which enter into program participation agreements with the Department of Education

16  agreeing to abide by certain terms and conditions related to the funding.  *U.S. ex rel. Hendow v.*

17  *University of Phoenix*, 461 F.3d 1166, 1168-69 (9th Cir. 2006).

18         Among these conditions, the Higher Education Act limits participating institutions' ability to

19  compensate recruiters based on their success in securing enrollments or awards of financial aid:

20             The institution will not provide any commission, bonus, or other incentive
21             payment based directly or indirectly on success in securing enrollments or
               financial aid to any persons or entities engaged in any student recruiting or
22             admission activities or in making decisions regarding the award of student
               financial assistance. . . .

23  20 U.S.C. § 1094(a)(20).  Congress enacted this provision – known as the "incentive compensation

24  ban" – in 1992 in response to concerns that some institutions might accept unqualified students in

25  order to collect tuition.  *Hendow*, 461 F.3d at 1168-69.  The government's fear was that these

26  students, who might be unable to complete degrees or obtain employment thereafter, were more

27
28  likely to default on federal or federally-guaranteed student loans.  *Id*.

DEFENDANTS' BRIEF IN SUPPORT                                    CASE NO. 2:10-CV-02478-MCE-KJN
OF MOTION TO DISMISS                        2

1   The Higher Education Act, however, does not provide that an institution may never consider

2   enrollment or recruitment success in making compensation decisions.  Instead, regulations enacted

3   by the Department of Education in 2002 expressly allow enrollment-based compensation, so long as

4   enrollment is not the exclusive criterion on which recruiter payments are made:

5

6   > Activities and arrangements that an institution may carry out without violating
    > the [incentive compensation ban] include, but are not limited to: [t]he payment

7   > of fixed compensation, such as a fixed annual salary or a fixed hourly wage,
    > as long as that compensation is not adjusted up or down more than twice

8   > during any twelve month period, and any adjustment is not based *solely* on the
    > number of students recruited, admitted, enrolled, or awarded financial aid.

9   34 C.F.R. § 668.14(b)(22)(ii)(A) (emphasis added).[2]

10

11   ## III.   THE *HENDOW* LITIGATION.

12   The *Hendow* complaint was filed on March 7, 2003 and subsequently amended on September

13   2, 2003 and March 4, 2004.  (Ex. 2; *Hendow* docket attached hereto as Ex. 3).  The allegations in

14   that case were the same as here – that UOPX paid recruiters in violation of the incentive

15   compensation ban and falsely certified to the contrary on its program participation agreements with

16   the Department of Education.  (Ex. 2 at ¶ 1).  These certifications, relators in that case alleged,

17   constituted "false claims" under the federal False Claims Act.  (*Id.*)  No state law causes of action

18   were pled.  Although the legal theory and conclusions of the *Hendow* complaint were identical to

19   those in the present lawsuit, there was a critical difference.  Whereas the Complaint here lacks any

20   substantive details, the *Hendow* complaint included approximately 25 paragraphs of specific,

21   detailed factual allegations in support of its fraud claims.  (Ex. 2 at ¶¶ 17-22, 39-59).

22   Although the United States declined to intervene in *Hendow*, the complaint there prompted a

23   program review by the Department of Education regarding UOPX's compliance with the incentive

24   compensation ban.  On September 7, 2004, UOPX agreed to pay $9.8 million to settle the

25   [2]   Effective July 1, 2011, these safe harbors were eliminated and replaced with a broad-based ban on all

26   compensation related to student enrollment: "[An institution] will not provide any commission, bonus, or other incentive payment based, directly or indirectly upon success in securing enrollments or financial aid to any person or entity

27   engaged in any student recruitment or admission activities, or in making decisions regarding the awarding of title IV, HEA program funds."  34 C.F.R. § 668.14(b)(22)(i) (effective July 1, 2011).  Nevertheless, the provision cited here (34

28   C.F.R. § 668.14(b)(22)(ii)(A)) was in place throughout the period of Counts I and II of the Complaint and for virtually the entire period of Counts III and IV.

DEFENDANTS' BRIEF IN SUPPORT                                    CASE NO. 2:10-CV-02478-MCE-KJN
OF MOTION TO DISMISS                           3

investigation, resolving all possible issues covering the period September 1, 1998 to June 30, 2004. (U.S. Department of Education Settlement Agreement, attached hereto as Ex. 4, ¶¶ I(A), (B)).[3] The *Hendow* case itself continued for more than five years after the Department of Education settlement, producing two Ninth Circuit opinions.[4]  On December 11, 2009, UOPX agreed to pay $67.5 million to settle the *Hendow* litigation (of which relators received $19 million), as well as an additional $11 million paid by UOPX in relators' attorney's fees.  (Ex. 1, at ¶1; Attorneys Fee Agreement, attached hereto as Ex. 5, at ¶ 1).

The *Hendow* Settlement Agreement resolved any and all claims arising from "Covered Conduct," meaning "any conduct relating to the University of Phoenix's compliance or noncompliance with the incentive compensation provision, 20 U.S.C. §1094(a)(20), and/or the Department of Education's associated regulations, 34 C.F.R. § 668.14(b)(22), from March 1997 to [December 11, 2009]." (Ex. 1 at ¶ C). [5]  In addition, the agreement expressly released all federal and state law claims that the government and/or the relators may have had.  As to the government:

> [T]he United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release the Apollo Entities . . . from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act []; the Program Fraud Civil Remedies Act; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and common law fraud . . . .

(*Id.* at ¶ 3).  As to the Relators:

> Relators, for themselves and for anyone that may claim through them (including their heirs, successors, attorneys, agents, and assigns), agree to release the Apollo Entities, their officers, directors, agents, employees, successors, and assigns from any civil monetary claim the United States has or may have under the federal False Claims Act [], including, but not limited to claims related to the . . . allegations in any of Relators' complaints, and from any other liability to relators arising from the filing of the Civil Action. Additionally . . . Relators, for themselves and for anyone that may claim through them (including their heirs, successors, attorneys, agents, and assigns), agree to completely release and forever discharge the Apollo Entities, their officers, directors, agents, employees, successors, and assigns from any and all claims, demands, obligations, actions, causes of action, class

---

[3]     UOPX "strongly dispute[d]" the allegations made in the government's program review and the settlement with the Department of Education included no "admission or concession by either party of any liability."  (*Id.*)

[4]     *Hendow*, 461 F.3d 1166; *Hendow v. University of Phoenix,* 296 Fed. Appx. 587 (9th Cir. 2008).  None of the issues raised in those decisions is relevant to this motion.

[5]     As with the program review settlement, UOPX expressly denied "any liability, wrongdoing, legal . . . noncompliance, or [] the validity . . . of any of the Relators' allegations" in the *Hendow* Settlement Agreement.  (Ex 1, at ¶ E).

> claims, rights and damages, costs, losses of services, expenses and compensation of any nature whatsoever that Relators may have or that derive or are based on any claims Relators may have . . . based upon events occurring prior to the date of the execution of this Agreement, including, but not limited to, any *qui tam* claims under federal or state law.

*Id*. at ¶ 5.[6]  Thus, the current litigation, although brought by two new relators, comes to the Court shortly following a nearly identical case that went on for six years and settled at a cost of $78.5 million, on top of $9.8 million that UOPX paid to settle the related Department of Education program review.

## IV.     RELATORS HOGGETT AND GOOD.

Relators Hoggett and Good are former employees of UOPX's campus in Austin, Texas. Hoggett worked as an enrollment counselor from March 16, 2007 until his termination for cause on May 5, 2010.  (Compl. at ¶ 8).  Good worked as an enrollment counselor from November 2008 until his termination for cause on August 18, 2010.  (Compl. at ¶ 9).

Based on these limited time horizons, the combined employment (and possible knowledge) of relators spans just over a three-year period, eight months of which occurred after the *Hendow* settlement on December 11, 2009.  As a result, relators here had scant opportunity to observe the alleged conduct that is at the root of their case, especially with respect to the state law claims purportedly spanning ten years prior to the filing of their Complaint.  Indeed, as to the state law claims, relators allege no basis for knowing *anything* about UOPX's activities for roughly two-thirds of the relevant time period.  (Compl. at ¶¶ 8, 9).

---

[6]       Even irrespective of the broad language of the *Hendow* Settlement Agreement's releases, the statutory "first-to-file" rule, contained in both the False Claims Act and the CFCA, provides that once a *qui tam* suit is filed, "no person other than the Government may . . . bring a related action based on the facts underlying [a] pending action." 31 U.S.C. § 3730(b)(5); *see also* Cal. Gov't Code § 12652(c)(10) ("no other person may bring a related action based on the facts underlying the pending action").  To fall within this rule, an action need not assert facts identical to those in a prior complaint. *U.S. ex rel. Lujan v. Hughes Aircraft Co*., 243 F.3d 1181, 1188-89 (9th Cir. 2001) (affirming dismissal of False Claims Act complaint).  Rather, "'[S]ection 3750(b)(5) precludes a subsequent relator's claim that alleges the defendant engaged in the same type of wrongdoing as that claimed in a prior action *even if the allegations cover a different time period* or location within the company.'" *Lujan*, 149 F.3d at 1188 (quoting *United States ex rel. Capella v. United Technologies Corp*., No. 3:94-CV-2063 (EBB), 1999 WL 464536, at *9 (D. Conn. June 3, 1999)) (emphasis added).  The purpose of the first-to-file provision is to prevent duplicative *qui tam* suits once an earlier complaint has been filed and placed the government on notice of the alleged fraud. *Lujan*, 243 F.3d at 1187; *see also U.S. ex rel. St. John Lacorte v. Smithkline Beecham Clinical Labs*, 149 F.3d 227, 234 (3d Cir. 1998).  Once the government has been placed on notice, it can investigate the allegations and no additional suits need be filed to alert the government to the claims or otherwise protect the government's interests. *St. John Lacorte*, 149 F.3d at 234.

1    Both the United States and the State of California have declined to intervene in this matter.

2    (Doc. No. 5: Notice of Declination Pursuant to the California False Claims Act; Doc. No. 9: Order re

3    Declination by United States).

4    <center>**ARGUMENT**</center>

5    **I.     STANDARD FOR DECISION.**

6        Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of

7    the claim showing that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949.  As construed by

8    the Supreme Court in *Iqbal*, however, this means that "only a complaint that states a plausible claim

9    for relief survives a motion to dismiss." *Id*. at 1950.  Although the factual allegations in a complaint

10   are presumed true for purposes of a motion to dismiss, courts are "not bound to accept as true a legal

11   conclusion couched as a factual allegation." *Id.* at 1949-50.   The court must first weed out

12   allegations that are no more than legal conclusions, then determine whether the remaining

13   allegations establish a plausible entitlement to relief.  *Id*. at 1950.

14       In a fraud claim, the pleading standard is higher.  Rule 9(b) of the Federal Rules of Civil

15   Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the

16   circumstances constituting fraud or mistake."  *Id*.  Specifically, Rule 9(b) requires that the plaintiff

17   "state the time, place, and specific content of the false representations as well as the identities of the

18   parties to the misrepresentation."  *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.,* 806

19   F.2d 1393, 1401 (9th Cir. 1986); *see also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems,*

20   *Inc.,* 637 F.3d 1047, 1054-55 (9th Cir. 2011) ("To satisfy Rule 9(b), a pleading must identify the

21   who, what, when, where, and how of the misconduct charged, as well as what is false or misleading

22   about the purportedly fraudulent statement, and why it is false") (internal citations omitted).

23       The heightened pleading standard of Rule 9(b) applies to allegations under the False Claims

24   Act.  *Bly-Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001); *see also Gold v. Morrison-*

25   *Knudsen Co.,* 68 F.3d 1475, 1477 (2d Cir. 1995) (collecting cases).   Thus, a False Claims Act

26   complaint is subject to both the Rule 9(b) particularity standard and the *Iqbal* plausibility

27   requirement.  *Cafasso,* 637 F.3d at 1055 ("we hold that claims of fraud or mistake – including FCA

28   claims – must, in addition to pleading with particularity, also plead plausible allegations").  To avoid

1    dismissal, *qui tam* relators must make particular, plausible allegations of fraud.

2            In reviewing a motion to dismiss, the court should consider the complaint and any exhibits

3    attached to it, as well as matters properly subject to judicial notice.  *Colony Cove Properties, LLC v.*

4    *City of Carson,* 640 F.3d 948, 955 (9th Cir. 2011).  A court may take judicial notice of settlements

5    and pleadings in prior cases.  *See, e.g., Ecology Center, Inc. v. Austin,* 430 F.3d 1057, 1061 n. 1 (9th

6    Cir. 2005); *Faragi v. Provident Life and Acc. Inc. Co.,* 161 Fed. Appx. 649 (9th Cir. 2005); *Beazley*

7    *v. Fujii*, 216 Fed. Appx. 701 (9th Cir. 2007).  A court may also take judicial notice of publications

8    introduced to indicate what information was in the public realm at a given time.  *Von Saher v.*

9    *Norton Simon Museum of Art at Pasadena,* 578 F.3d 1016, 1022 (9th Cir. 2009).

10   **II.      THE COMPLAINT FAILS TO SATISFY FED. R. CIV. P. 9(B) AND *IQBAL*.**

11           **A.      Relators' Complaint Does Not Satisfy Rule 9(b).**

12                   **1.      The Complaint Is Devoid Of Any Specificity.**

13           Relators' Complaint fails to satisfy the Rule 9(b) particularity requirement.  Relators never

14   specify the time, place or content of any alleged false representation.  Nor do they specify the

15   individuals responsible for making any alleged false representations, except by reference to broad

16   categories of "students," "employees" or "the UOP organization."  The following excerpts highlight

17   some of the many deficiencies in the Complaint:

18           •       Relators allege that "UOP falsifies information such as career information
19                   services offered by the college, financial aid practices, placement and graduation
                     statistics, and therefore makes substantial misrepresentations to potential
20                   students." (Compl. at ¶ 23).  Yet relators never so much as hint at a single specific
                     instance of false information being relayed and never explain when, where, how
21                   or by whom any of this purportedly false information is communicated.

22           •       Relators allege that "UOP managers hide their methods of rewarding recruiters
                     with financial compensation through a web of lies in their policies and
23                   procedures." (Compl. at ¶ 24).  Yet relators never identify a single one of these
                     managers, never plead a single misrepresentation made by any such manager nor
24                   specify any of the purportedly fraudulent policies and procedures of which they
                     complain.

25           •       Relators allege that "employees are forced to fudge the numbers and deceive
26                   everyone … and to report false data to use as effective tools to solidify the
                     decision of the potential students." (Compl. at ¶ 25).  Yet relators never identify a
27                   single employee so "forced" nor do relators allege when, where or how this
                     purported "fudging" occurs, what numbers are "fudged" or who, if anyone, orders
28                   them "fudged."  Indeed, it is unclear what the term "fudge" itself is intended to
                     mean, nor whether such "fudging" would set out a valid claim under the False

Claims Act.  Relators likewise fail to explain what "false data" is reported to students, how and by whom it is reported, or what, exactly, makes it false.

- Relators allege that "the UOP organization uses a series of deceptive methods to hide the fact they are paying recruiters based on the number of students enrolled." (Compl. at ¶ 26).  Yet relators never identify a single recruiter so paid nor do they state what these alleged deceptive methods consist of, when, where, and how the deception takes place or who, exactly, is deceived.

Contrary to the requirements of Rule 9(b), the Complaint fails to specify the time, place or content of *any* of the false representations it alleges.  Nor does it specify the parties to any of these alleged misrepresentations.  Instead, the Complaint pleads mere generalities, alleging widespread fraud and abuse without offering any specific examples in support.  This is exactly what Rule 9(b) was designed to prevent.  *Cafasso,* 637 F.3d at 1057 (allegation that "identifies a general sort of fraudulent conduct but specifies no particular circumstances of any discrete fraudulent statement is precisely what Rule 9(b) aims to preclude").

Within the past month, a Nevada district court dismissed a *qui tam* complaint against Kaplan, Inc., another higher education institution, on substantially similar grounds in *U.S. ex rel. Jajdelski v. Kaplan, Inc.,* No. 2:05-CV-1054-KJD-GWF, 2011 WL 2669485 (D. Nev. July 7, 2011) (order granting motion to dismiss attached hereto as Ex. 6).  In that case, the *qui tam* relator alleged fraud at Heritage College, a Kaplan subsidiary, including claims related to incentive compensation.  *Id.* at *1-2.  The district court dismissed the complaint, holding that the plaintiff had failed to satisfy Rule 9(b): "At no point has Plaintiff stated his allegations with sufficient specificity relating to time, place, and the identity of the parties to the alleged fraud to put Kaplan on notice of the particular misconduct which is alleged to constitute the fraud charged.  Nowhere does Plaintiff identify the false claims that were submitted to the Government, or when or where these false claims were submitted or even by whom."  *Id.* at *3 (internal citation omitted).  The same holds true here and the Complaint should be dismissed.

## 2. Hoggett And Good Fail To Plead Adequately When And Where Any Alleged Misconduct Occurred.

Relators Hoggett and Good were employed at UOPX's Austin campus for less than three years in the pre-*Hendow* settlement period and for only a matter of months post-Dec. 11, 2009.

1   (Compl. at ¶¶ 8, 9).  The limited duration and geographic scope of relators' employment, combined

2   with the generic nature of their allegations, warrants dismissal of the Complaint in two regards.

3       *First*, it is impossible to determine from the face of the Complaint whether *any* of the

4   conduct alleged, with the isolated exception of a single script-related allegation discussed in Part

5   B(2), *infra*, took place after the *Hendow* settlement on December 11, 2009, a critical date given the

6   releases contained in the Settlement Agreement.   As pled in the Complaint, for example, it is

7   impossible to determine when it is that UOPX purportedly "created an elaborate recruiting scheme

8   that uses pressure on its recruiters who are not successfully meeting enrollment budgets or targets."

9   (Compl. at ¶ 26).  Likewise, when did UOPX allegedly "use[] a series of deceptive methods to hide

10  the fact that they are paying recruiters based on the number of students enrolled"? (*Id.*).  Under the

11  circumstances of this case, where the Settlement Agreement bars all federal claims accruing prior to

12  December 11, 2009, relators' Complaint cannot survive without detailing when the alleged

13  misconduct occurred.   *S.M. ex rel. Allen v. West Contra Costa County Unified School Dist.*

14  *Financing Corp.,* No. C 07-5829, 2009 WL 1033826, at *6 (N.D. Cal. April 16, 2009) (dismissing

15  claim where plaintiff failed to allege that defendant's conduct occurred after period covered by prior

16  settlement); *see also E & E Co., Ltd. v. Kam Hing Enterprises, Inc.*, No. C-08-0871, 2009 WL

17  482240, at *4 (N.D. Cal. Feb. 25, 2009) ("a plaintiff [] must allege, at the very least, a range of dates

18  during which the conduct occurred") (internal citation omitted).

19      Again, the *Jajdelski* decision is instructive.  There, Kaplan acquired Heritage College in May

20  2003.  2011 WL 2669485, at * 1.  Just as the *Hendow* settlement here bars any federal False Claims

21  Act liability prior to December 11, 2009, any claims in *Jajdelski* had to be based on conduct after

22  May 2003, when Kaplan's successor liability would have attached.  But, as here, the *Jajdelski* relator

23  pled neither any misconduct after May 2003 nor any basis for liability before that date.  The district

24  court dismissed: "Plaintiff has again failed to provide sufficiently specific allegations relating to the

25  time, place, or parties involved, demonstrating that Defendant, as a successor to Heritage, had notice

26  of the claim or the actions out of which it arises prior to the acquisition of Heritage in May 2003.

27  Additionally, Plaintiff has not provided sufficiently specific allegations demonstrating that

28  Defendant continued to conduct the alleged fraudulent activities following its acquisition of

Heritage. . . .  Based on this failure to meet the heightened pleading requirements of Rule 9(b), by providing specific allegations of time, place, and involvement of Defendant in the alleged fraud, Defendant's Motion to Dismiss must be granted."  *Id*. at *3.

*Second*, as to the state law claims which purport to be pled back to September 15, 2001 (*i.e.* 10 years prior to the filing of the Complaint), relators offer no hint as to their source of knowledge during most of this period.  The first of the relators, Hoggett, did not begin working at UOPX until March 16, 2007.  (Compl. at ¶ 8).  Neither Hoggett nor Good are alleged to ever have worked in California.  (*Id*. at ¶¶ 8, 9).  Thus, relators do not explain how working in Texas for approximately three years provides them with any insight into events purportedly taking place in California "each year" and "every year" during the ten-year period charged in Counts III and IV.  (Compl. at ¶¶ 22, 27).  This lack of specificity as to the relators' purported source of knowledge renders the Complaint fatally defective.  *See U.S. ex rel. Ebeid v. Lungwitz,* 616 F.3d 993 (9th Cir. 2010) (affirming dismissal of *qui tam* claim under Rule 9(b) where relator "was not privy to the details" of the conduct alleged to be fraudulent).  As the Ninth Circuit recently explained in *Ebeid*, the False Claims Act was designed to encourage corporate *insiders* to disclose fraud on the government and there is no reason to relax the requisite pleading standards in order to permit similar claims by *outsiders* having no particular knowledge of the defendant's activities.  *Id.* at 999 ("To jettison the particularity requirement simply because it would facilitate a claim by an outsider is hardly grounds for overriding the general rule").

### 3. The Complaint Does Not Adequately Plead That UOPX's Recruiter Compensation Program Falls Outside Available Higher Education Act Safe Harbors.

As described above, Department of Education regulations establish several safe harbors for recruiter compensation practices.  In particular, even if recruitment metrics make up some part of a school's compensation formula, this is expressly permitted so long as it is not the sole criteria by which salary adjustments are made: "Activities and arrangements that an institution may carry out without violating the [incentive compensation ban] include . . . [semi-annual salary adjustments] as long as . . . any adjustment is not based *solely* on the number of students recruited, admitted, enrolled, or awarded financial aid."  34 C.F.R. § 668.14(b)(22)(ii)(A) (emphasis added).

The Ninth Circuit has held that to survive a motion to dismiss in this context, relators specifically must plead that a defendant institution's practices do not satisfy a safe harbor.  In *U.S. ex rel. Bott v. Silicon Valley Colleges,* 262 Fed. Appx. 810, 811 (9th Cir. 2008), for instance, two former employees claimed that an educational institution violated the Higher Education Act by improperly paying recruiters and that its requests for federal education funding therefore constituted false claims.  *Id.*  The trial court dismissed and the Ninth Circuit affirmed based on the failure of relators to plead specific facts establishing that the defendant's salary adjustments were based solely on enrollment numbers: "Relators have not pled specific facts supporting the inference that salary reviews were performed solely on the basis of recruiting success.  Nor have relators pled with sufficient particularity any facts demonstrating that the salary review system was merely a sham mechanism for funneling improper incentive pay."  *Id.* at 811-812.  *See also U.S. ex rel. Lee v. Corinthian Colleges,* No. CV 07-1984 PSG (MANx), 2009 WL 4730890, at *4 (C.D. Cal. Dec. 4, 2009) ("Corinthian Colleges' Compensation Program falls within the safe harbor, C.F.R. § 668.14(b)(22)(ii)(A), and thus Relators fail to allege that Corinthian Colleges made a false statement to the Department of Education"); *U.S. ex rel. Pilecki-Simko v. The Chubb Institute,* No. 06-3562, 2010 WL 1076228 at *10 (D. N.J. Mar. 22, 2010) ("it stands to reason that an institution adhering to a federal regulation defining the contours of permissible compensation under the incentive compensation ban cannot have the requisite scienter to violate the ban").

Here, relators allege in conclusory fashion that "the only criterion for recruiters that truly counts is the number of students enrolled." (Compl. at ¶ 26).  But at the same time, the Complaint also states that UOPX uses "qualitative criteria" and a performance matrix, separate and apart from enrollment, to set compensation. (Compl. at ¶ 26).  As a result, relators have failed to plead with particularity UOPX's non-compliance with the Higher Education Act's safe harbor.  The Complaint therefore should be dismissed.

### B.   Relators' Complaint Does Not Satisfy *Iqbal's* Plausibility Standard.

In *Iqbal,* the Supreme Court held that a complaint must contain specific factual allegations that plausibly support the plaintiff's claim to relief.  129 S. Ct. at 1950.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949.

1   On a motion to dismiss, the court must ignore allegations that are merely legal conclusions and then

2   consider whether any genuine factual allegations plausibly give rise to an entitlement to relief. *Id.* at

3   1950.   Determining whether a complaint states a plausible claim for relief is a "context-specific

4   task," but the complaint must establish more than a mere "possibility of misconduct" to survive a

5   motion to dismiss. *Id.*   Under *Iqbal*, relators' Complaint states no plausible right to relief and should

6   be dismissed for at least two independent reasons.

7           1.      **Bare Allegations Of Improper Motive Or Policy Do Not Give Rise To A
                    Plausible Entitlement To Relief.**

8

9           Mere allegations that a defendant acted with improper motive or pursuant to a purported

10   clandestine policy that violates the law are not sufficient to survive a motion to dismiss.   Rather,

11   *Iqbal* requires a plaintiff to allege *facts* that establish the existence of such unlawful motive or

12   policy.   Here, as throughout their Complaint, relators Hoggett and Good allege in conclusory fashion

13   that UOPX, motivated by "greed, and the intention of obtaining profit," secretly evaluated recruiters

14   based on their enrollment numbers even though its official evaluation metrics focused on other

15   criteria.   (Compl. at ¶ 25-26).   Yet the Complaint contains not one specific, factual example of an

16   occasion on which UOPX compensated its employees based solely on enrollment numbers.

17           Applying *Iqbal,* the Ninth Circuit recently affirmed the dismissal of a complaint with similar

18   shortcomings as this one.   In *Moss v. U.S. Secret Service,* 572 F.3d 962 (9th Cir. 2009), plaintiffs

19   alleged that the Secret Service violated their rights by removing protestors from the vicinity of a

20   hotel where President George W. Bush was dining.   Although official policies of the Secret Service

21   prohibited differential treatment of pro- and anti-government protestors, plaintiffs alleged that these

22   policies were a "sham" and that the agency in fact operated under a secret policy by which anti-

23   government protestors were treated differently, in violation of law.   *Id.* at 966.   The Ninth Circuit

24   held that these conclusory allegations failed to satisfy *Iqbal's* plausibility standard:

25                  The bald allegation of impermissible motive on the Agents' part,
                    standing alone, is conclusory and is therefore not entitled to an
26                  assumption of truth. The same is true of Plaintiffs' allegation that, in
                    ordering the relocation of their demonstration, the Agents acted in
27                  conformity with an officially authorized *sub rosa* Secret Service policy
                    of suppressing speech critical of the President. The allegation of
28                  systematic viewpoint discrimination at the highest levels of the Secret

Service, without *any* factual content to bolster it, is just the sort of conclusory allegation that the *Iqbal* Court deemed inadequate, and thus does nothing to enhance the plausibility of Plaintiffs' viewpoint discrimination claim against the Agents.

*Id.* at 970 (emphasis in original).

*Moss* held that where a complaint alleges no specific facts that plausibly establish wrongdoing by the defendant, it cannot be saved by conclusory allegations of an improper motive or policy. As this is all that relators offer here, the Complaint should be dismissed.

### 2.   Relators' Sole Specific Allegation Is Unexplained And Irrelevant.

There is, at most, one specific factual allegation in the entire Complaint, and it fails to establish any wrongdoing by UOPX. Relators allege that "[i]n early August 2010, Compliance Manager Ryan Stanley and others in management publicly ordered all enrollment counselors at the South Austin UOP campus to print, and then destroy, any files or documents on their desktop computers that related to training, and sales scripts. Management then confiscated all of the printed documents. Recruiters were not told to stop using these scripts, they were not to keep any evidence of them." (Compl. at ¶ 27).

Even if this allegation is assumed to be true (as it must be for purposes of a motion to dismiss), it suggests no wrongdoing. On the contrary, the events described are at least equally consistent with an attempt to ensure compliance with the Higher Education Act by preventing enrollment counselors from using inappropriate or unauthorized scripts. Such an explanation, of course, would make much more sense than relators' intimation of wrongdoing, since the individual purportedly directing the destruction of the scripts is alleged to be a "Compliance Manager." (Compl. at ¶ 27). The point for purposes of this motion is that relators do not allege anything unlawful about the episode and, indeed, the Complaint's averments are at least equally consistent with an attempt to abide by the Higher Education Act.

Regardless, far from adding to the plausibility of relators' Complaint, this single factual allegation is irrelevant to plaintiffs' core claims. That UOPX used sales scripts or not, that the school changed sales scripts or not, that it destroyed sales scripts or not, says nothing about defendants' incentive compensation practices or whether those practices were in violation of

1   Department of Education rules.  Paragraph 27 contains the *only* specific factual allegation in the

2   entire Complaint, yet its purported relevance to the underlying claims goes wholly unexplained.  It is

3   therefore implausible and cannot save the Complaint.

4   **III.    THE STATE LAW CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

5            **AND SHOULD BE DISMISSED FOR LACK OF JURISDICTION.**

6            Relators' claims under the California False Claims Act ("CFCA"), Counts III and IV, suffer

7   from the same deficiencies discussed above – namely, a lack of factual specificity that falls short of

8   the standards established by *Iqbal* and Rule 9(b).  These pleading requirements apply equally to state

9   law claims brought in federal court.  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009)

10  ("It is well-settled that the Federal Rules of Civil Procedure apply in federal court, irrespective of the

11  source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is

12  state or federal") (internal citation omitted).  Even if the court were to determine that Counts III and

13  IV are not deficient under the Federal Rules, however, the Court should still dismiss those claims for

14  the reasons below.

15           **A.    Relators' State Law Claims Are Barred By The Statute Of Limitations.**

16           Claims under the CFCA must be brought within three years after discovery by the California

17  attorney general or other prosecuting authority within the jurisdiction.  Cal. Gov't Code § 12654(a).

18  The term "attorney general or other prosecuting authority" has been construed to mean a responsible

19  government official.  *State ex rel. Hindin v. Hewlett-Packard,* 153 Cal. App. 4th 307 (2007).

20  Discovery means the time "when the official . . . charged with responsibility to act in the

21  circumstances either knows of the false claim or knows of facts which would lead a reasonably

22  prudent person to suspect it."  *Debro v. Los Angeles Raiders,* 92 Cal. App. 4th 940, 953 (2001)

23  (internal citation omitted).   Thus, only inquiry notice is required to start the running of the

24  limitations period – not actual notice.  *Id.*

25           Any number of California officials would have received such notice upon the filing of the

26  *Hendow* complaint in 2003, more than eight years ago, because that pleading made exactly the same

27  allegations as the present Complaint.   The *Hendow* case was the subject of extensive press

28

coverage.[7]   So too was the 2004 settlement between UOPX and the Department of Education.[8] Indeed, regulation of for-profit educational institutions has been a topic of considerable debate in California over the past several years, with former Governor Arnold Schwarzenegger declaring in 2007, "I want to work with the Legislature to pass legislation early next year so that our students will have the protections they deserve."[9]

In light of the extensive press coverage this issue – and the UOPX litigation, in particular – has received since the filing of the *Hendow* complaint, it is beyond dispute that any number of California officials who might have brought this lawsuit on behalf of the State were aware of the facts giving rise to these alleged false claims well over three years ago.  The failure of these officials – or any *qui tam* relator, for that matter – to bring suit within three years of learning of the *Hendow* lawsuit bars such claims and supports dismissal of the current Complaint.[10]

## B.   Relators' State Law Claims Should Be Dismissed For Lack Of Jurisdiction.

Even if the Court were to reject UOPX's pleading and statute of limitations arguments, the state law claims should still be dismissed for want of jurisdiction if the federal claims are set aside.

---

[7]        In the period prior to September 15, 2007 (three years before the filing of this Complaint), the *Hendow* case was the subject of the following articles, and more: Peg Brickley, *Court Revives Whistleblower Suit Vs. Univ. Of Phoenix,* Dow Jones Newswires, Sept. 5, 2006; Henry Weinstein, *University of Phoenix Faces Fraud Suit,* Los Angeles Times, Sept. 6, 2006; Betsy Vereckey, *Apollo trades lower on fraud lawsuit,* Associated Press, Sept. 6, 2006; Dawn Gilbertson, *Court Revives U. of Phoenix Fraud Lawsuit,* Arizona Republic, Sept. 6, 2006; Martin Van Der Werf and Goldie Blumenstyk, *Federal Appeals Court Reinstates False-Claims Lawsuit Against U. of Phoenix,* Chronicle of Higher Education, Sept. 15, 2006; Sam Dillon, *Troubles Grow For a University Built on Profits,* New York Times, Feb. 11, 2007; *Court refuses to step into case involving student recruitment at university,* Associated Press, April 23, 2007; *U.S. Supreme Court refuses to review Apollo case,* Reuters, April 24, 2007; Henry Weinstein, *University of Phoenix case to stand,* Los Angeles Times, April 24, 2007; Lisa Krieger, *Lawsuit: University of Phoenix breached ethics, laws,* San Jose Mercury News, June 23, 2007; Henry Weinstein, *School asks judge to dismiss fraud case,* Los Angeles Times, June 26, 2007; Patrick May, *Fraud case heads to trial,* San Jose Mercury News, Aug. 21, 2007; Henry Weinstein, *School's enrollment fraud case heads to trial,* Los Angeles Times, Aug. 21, 2007.

[8]        *US Dept Of Education Fines University Of Phoenix $9.8 Mln,* Dow Jones Newswires, Sept. 14, 2004; *For-profit university pays up,* Dallas Morning News, Sept. 14, 2004; *Critical federal report on for-profit University of Phoenix leads to $9.8 million fine,* Associated Press, Sept. 14, 2004; *Student-Recruitment Tactics Blasted By Feds; Univ. Of Phoenix Audit Leads To $9.8 Mil Fine,* Arizona Republic, Sept. 14, 2004; John Hechinger, *Will Apollo's Bad Report Card Get Its Shares Grounded?,* Wall Street Journal, Sept. 15, 2004; *School fine may foretell crackdown,* Chicago Tribune, Sept. 15, 2004; *Apollo Group Fined,* Education Week, Sept. 29, 2004; Goldie Blumenstyk, *U. of Phoenix Uses Pressure in Recruiting, Report Says,* Chronicle of Higher Education, Oct. 8, 2004; Eryn Brown, *Can For-Profit Schools Pass an Ethics Test?,* New York Times, Dec. 12, 2004.

[9]        Michael Rothfeld, *Gov. gets heat on schools,* Los Angeles Times, Sept. 9, 2007.

[10]        The expiration of a statute of limitations may be the basis for granting a motion to dismiss where it appears on the face of the complaint that the limitations period has been exhausted. *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980).  Here, the Complaint specifically refers to the *Hendow* litigation and the Department of Education settlement, which would have started the limitations period running.  (Compl. at ¶ 4).

DEFENDANTS' BRIEF IN SUPPORT                                    CASE NO. 2:10-CV-02478-MCE-KJN
OF MOTION TO DISMISS                           15

As a starting point, in the absence of the federal False Claims Act counts, there would be neither federal question nor diversity jurisdiction over the CFCA counts.  As to the latter, although UOPX and the relators may be citizens of different states, there is no basis for diversity jurisdiction here because the true party in interest is the State of California.  *See U.S. ex rel. Killingsworth v. Northrop Corp.,* 25 F.3d 715, 720 (9th Cir. 1994) ("It is clear…that in a *qui tam* action, the government is the real party in interest.").  The State of California is not a "citizen" of any state for diversity purposes.  *Moor v. Alameda Cty.,* 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction").  Therefore, a suit between the State of California and UOPX is not a case or controversy between "citizens of different States" and there can be no diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *See, e.g., State ex rel. Service Disabled Veterans Telecommunications v. MCI Telecommunications Corp.,* 185 F.3d 868 (9th Cir. 1999) ("Because California is not a citizen of a state, diversity is defeated and the district court lacked jurisdiction" to hear state law *qui tam* action); *New Mexico ex rel. National Education Ass'n of New Mexico, Inc. v. Austin Capital Mgmt. Ltd.,* 671 F. Supp. 2d 1248 (D. N.M. 2009) (remanding *qui tam* action under New Mexico false claims statute due to lack of diversity jurisdiction).

If all federal claims are dismissed, a federal district court still technically has the discretion to retain supplemental jurisdiction over related state law claims.  *See, e.g., Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001).  But a court should decline to exercise this jurisdiction where the state-law claim "substantially predominates" or where "the district court has dismissed all claims over which it had original jurisdiction."  28 U.S.C. § 1367(c)(3); *see Jajdelski*, 2011 WL 2669485, at *4 ("The Court declines supplemental jurisdiction on the remaining state claims").  There is no reason for a contrary result here.

///

///

///

///

///

///

1

## <u>CONCLUSION</u>

2

For the foregoing reasons, defendants respectfully request that the Complaint be dismissed.

3

4

DATED:  July 12, 2011                    Respectfully submitted,

5

KIRKLAND & ELLIS LLP

6

/s/ Casey M. Nokes

7

Casey M. Nokes
Jonathan C. Bunge (*pro hac vice* pending)

8

Leonid Feller (*pro hac vice* pending)
Alec Solotorovsky (*pro hac vice* pending)

9

10

Attorneys for Defendants,
UNIVERSITY OF PHOENIX

11

 and APOLLO GROUP, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of the attached **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMIS**S via the CM/ECF system on July 12, 2011.


DATED: July 12, 2011

                            By: /s/ Casey M. Nokes
                               Casey M. Nokes