1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA and        No. 2:10-cv-02478-MCE-KJN
     STATE OF CALIFORNIA, ex rel.
12   DEREK HOGGETT and TAVIS
     GOOD,
13
              Plaintiffs,
14
         v.                              <u>MEMORANDUM AND ORDER</u>
15
     UNIVERSITY OF PHOENIX, APOLLO
16   GROUP, INC., and DOES 1
     through 100, inclusive,
17
              Defendant.
18

19                         ----oo0oo----

20

21        Through the present action, Relator Plaintiffs Derek Hoggett

22   and Tavis Good ("Relators") sue UOPX under the False Claims Act,

23   31 U.S.C. § 3729, et seq. ("FCA") and its California counterpart,

24   Government Code § 3729, et seq. ("CFCA"). Relators are former

25   admission counselors for the University of Phoenix, a for-profit

26   post-secondary education institution and a subsidiary of

27   Defendant Apollo Group (hereinafter collectively referred to as

28   "UOPX").

                                    1

1  Relators allege that UOPX submitted false claims for federal
2  student financial aid funds to the United States Department of
3  Education pursuant to the Higher Education Act, Title IV ("HEA")
4  from at least December 12, 2009 to the present.

5      Presently before the Court is UOPX's Motion to Dismiss.
6  UOPX first argues that the Court lacks jurisdiction under Federal
7  Rule of Civil Procedure 12(b)(1) because a prior lawsuit (United
8  States ex rel. Hendow v. University of Phoenix, No. 2:03-cv-0457-
9  GEB-DAD (E.D. Cal.) (Burrell, J.)), also against UOPX, bars the
10  present action under the so-called "first to file" rule.
11  According to UOPX, that lawsuit settled on or about December 11,
12  2009 at a total cost of some $78.5 million, and involved
13  virtually identical allegations of misconduct.  Secondly, UOPX
14  argues that Plaintiffs cannot state a viable claim in any event,
15  pursuant to Rule 12(b)(6), because their complaint, and the
16  exhibits thereto, show that UOPX is entitled to a safe harbor
17  provision from false claims act liability.  Finally, UOPX
18  contends, with respect to the CFCA claims, that they fail for
19  several independent reasons, including a limitations bar, the
20  fact that California law permitted enrollment based recruiter
21  payments for much of the time period in question, and also
22  because the Court should decline to exercise supplemental
23  jurisdiction over the state law claims in any event if no
24  cognizable federal claim is present.
25  ///
26  ///
27  ///
28  ///

2

1    For the reasons set forth below, UOPX's Motion to Dismiss
2 will be denied.[1]

3

4                              **BACKGROUND**

5

6    Relators allege that UOPX, despite its settlement of earlier
7 charges in 2009, in fact continues to violate HEA's prohibition
8 against awarding incentive payments to recruiters based solely on
9 enrollment numbers. (Second Amended Complaint ("SAC"), ECF
10 No. 36, at 2.)[2]  By knowingly or recklessly submitting false
11 representations of compliance with requests for HEA or California
12 student financial aid funds, Relators claim that UOPX violated
13 FCA sections 3729(a)(1) and (a)(2), and CFCA § 3729.  (Id.)
14    Relators allege that from at least December 12, 2009, UOPX
15 has fraudulently asserted that it "had not paid to any persons or
16 entities any commission, bonus, or other incentive payment based
17 directly or indirectly on success in securing enrollments...for
18 each year at issue."  (Id. at 6.)  Relators contend that although
19 UOPX disguises its compensation practices with a "matrix" that
20 ostensibly lists non-enrollment criteria for performance
21 evaluation, in practice, enrollment numbers are the sole, direct
22 factor in determining promotion, salaries, and bonuses.  (Id. at
23 6-7.)
24 ///

25

26    [1] Because oral argument was not of material assistance, the
Court ordered this matter submitted on the briefs.  E.D. Cal.
27 Local Rule 230(g).

28    [2] Unless otherwise noted, all factual background information
is taken from the Second Amended Complaint's factual allegations.

1    Relators further allege that this conduct was not deterred
2  or altered by the Hendow settlement, and that the fraudulent
3  activities continued with the knowledge and support of UOPX
4  compliance officials. (Id.)  Relators claim that they were told
5  to destroy documents related to training and recruitment, and
6  were also told that there were no plans to change the old
7  policies. (Id. at 9-11.)  Relators allege that despite the
8  performance matrix, UOPX continues to "stack rank" counselors
9  based on their number of enrollments, and uses that ranking to
10 determine compensation. (Id. at 11.)  Further, UOPX continues to
11 publish separate documents showing a salary range aligned with
12 each performance rating from the matrix, so that a counselor can
13 determine his or her salary range based on their enrollment
14 levels. (Id.)  Finally, Relators detail numerous occasions when
15 UOPX officials and employees told Relators directly that
16 compensation decisions are based solely on enrollment numbers
17 (Id. at 9.)  Relators argue that these facts, and others alleged
18 in the Second Amended Complaint, show that UOPX knowingly bases
19 recruiter compensation on enrollment numbers, while trying to
20 disguise this illicit behavior with a misleading performance
21 evaluation matrix, all in violation of the FCA and CFCA.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

4

1

**STANDARD**

2

3      In moving to dismiss for lack of subject matter jurisdiction

4  pursuant to Rule 12 (b)(1), the challenging party may either make

5  a "facial attack" on the allegations of jurisdiction contained in

6  the complaint or can instead take issue with subject matter

7  jurisdiction on a factual basis ("factual attack").  <u>Thornhill</u>

8  <u>Publishing Co. v. General Tel. & Elect. Corp</u>., 594 F.2d 730, 733

9  (9th Cir. 1979); <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>,

10  549 F.2d 884, 891 (3d Cir. 1977).  If the motion constitutes a

11  facial attack, the Court must consider the factual allegations of

12  the complaint to be true.  <u>Williamson v. Tucker</u>, 645 F.2d 404,

13  412 (5th Cir. 1981); <u>Mortensen</u>, 549 F.2d at 891.  If the motion

14  constitutes a factual attack, however, "no presumptive

15  truthfulness attaches to plaintiff's allegations, and the

16  existence of disputed material facts will not preclude the trial

17  court from evaluating for itself the merits of jurisdictional

18  claims." <u>Thornhill</u>, 594 F.2d at 733 (quoting <u>Mortensen</u>, 549 F.2d

19  at 891).

20      On a motion to dismiss for failure to state a claim under

21  Rule 12(b)(6), all allegations of material fact must be accepted

22  as true and construed in the light most favorable to the

23  nonmoving party.  <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336,

24  337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and

25  plain statement of the claim showing that the pleader is entitled

26  to relief" in order to "give the defendant fair notice of what

27  the...claim is and the grounds upon which it rests."

28  ///

1  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)

2  (internal citations and quotations omitted).  Though "a complaint

3  attacked by a Rule 12(b)(6) motion to dismiss does not need

4  detailed factual allegations, a plaintiff's obligation to provide

5  the 'grounds' of his 'entitlement to relief' requires more than

6  labels and conclusions, and a formulaic recitation of the

7  elements of a cause of action will not do."  Id. at 1964-65

8  (internal citations and quotations omitted).  A plaintiff's

9  factual allegations must be enough to raise a right to relief

10  above the speculative level.  Id. at 1965 (citing 5 C. Wright &

11  A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d

12  ed. 2004) ("The pleading must contain something more...than...a

13  statement of facts that merely creates a suspicion [of] a legally

14  cognizable right of action")).

15      Moreover, "Rule 8(a)(2)...requires a 'showing,' rather than

16  a blanket assertion of entitlement to relief.  Without some

17  factual allegation in the complaint, it is hard to see how a

18  claimant could satisfy the requirements of providing not only

19  'fair notice' of the nature of the claim, but also 'grounds' on

20  which the claim rests."  Twombly, at 1965, n.3 (internal

21  citations omitted).  A pleading must contain "only enough facts

22  to state a claim to relief that is plausible on its face."  Id.

23  at 1960; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

24  (2009).  If the "plaintiffs...have not nudged their claims across

25  the line from conceivable to plausible, their complaint must be

26  dismissed."  Id.

27  ///

28  ///

6

**ANALYSIS**

**A.   Relators' Claim Is Not Jurisdictionally Barred Pursuant to 31 U.S.C. § 3730(b)(5) and § 3730(e)(4).**

UOPX argues that Relators lack jurisdiction pursuant to Rule 12(b)(1) because their claim is barred by the first-to-file rule laid out in § 3730(b)(5), which bars so-called qui tam litigants[3] from bringing related claims based on the facts underlying a pending action. (MTD at 2.) UOPX contends that Relators' allegations are aimed at the continuation of practices identical to those already litigated in Hendow. (Id.) UOPX acknowledges that the alleged fraud took place after Hendow, but contends that § 3730(b)(5) "precludes a subsequent relator's claim that alleges the defendant engaged in the same type of wrongdoing as that claimed in a prior action even if the allegations cover a different time period." (Id.) (quoting United States ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1188 (9th Cir. 2001) (internal quotations omitted).

Relators, on the other hand, argue that Hendow was dismissed on December 17, 2009, long before this action was filed on September 15, 2010. (Opp. at 1-2.) According to Relators, because Hendow was no longer pending at the time of filing, the present suit is not barred by the first-to-file rule. (Id. at 2.)

---

[3] A qui tam action is brought by private litigants against a person or company believed to have violated the law in the performance of a contract with the government, or in violation of a governmental regulation. Qui tam suits are brought for the government's benefit as well as for the plaintiffs.

7

1    UOPX further claims that Relators lack jurisdiction under

2    § 3730(e)(4) because the factual allegations underlying the

3    Second Amended Complaint were publicly disclosed in the <u>Hendow</u>

4    litigation. (Reply at 5.) UOPX also argues that Relators are

5    not original sources under § 3730(e)(4)(B). (<u>Id.</u> at 7.)

6    All of UOPX's contentions will now be addressed in turn.

7

8            **1.   Relators are not barred from bringing suit under**

              **§ 3730(b)(5) because the previous suit was not**

9             **pending.**

10

11   The FCA permits suits by private parties on behalf of the

12   United States against anyone submitting a false claim to the

13   government. <u>Lujan</u>, 243 F.3d at 1183. Under the FCA's first-to-

14   file provision, "no person other than the Government may...bring

15   a related action based on the facts underlying [a] pending

16   action." 31 U.S.C. § 3730(b)(5); <u>see also</u> Cal. Gov. Code

17   § 12652(c)(10) (same provision under CFCA). The Ninth Circuit

18   held that § 3730(b)(5) establishes an exception-free, first-to-

19   file bar, and dismissed Lujan's qui tam action for lack of

20   subject matter jurisdiction under § 3730(b)(5). <u>Lujan</u>, 243 F.3d

21   at 1183. <u>Lujan</u> is distinguishable from the present matter

22   because in that case, unlike here, the two suits in question

23   overlapped for a period of time. In <u>Lujan</u>, a previous suit was

24   filed in 1989 and dismissed in 1997. <u>Lujan</u>, 243 F.3d at 1188.

25   In 1992, plaintiff Lujan filed a related action based on the

26   facts underlying the original action.

27   ///

28   ///

1  Id.  In 2001, the Ninth Circuit ruled that the original case was
2  "pending" for the purpose of § 3730(b)(5), even though it was
3  dismissed prior to the completion of Lujan's suit.  Id.  The
4  Ninth Circuit found that "Lujan's action [was] barred if she
5  brought the claim while [the original suit] was pending."  Id.

6       Other cases cited by UOPX to support the proposition that a
7  previously dismissed case bars subsequent qui tam litigation
8  based on related facts all involve original suits that were
9  actually pending at the time the subsequent suit was brought.
10  See, e.g., United States ex rel. LaCorte v. SmithKline Beecham
11  Clinical Lab., Inc., 149 F.3d 227 (3d Cir. 1998) (dismissing
12  related qui tam suit brought before the final execution of a
13  settlement agreement in an earlier suit).  In the instant case,
14  Hendow was dismissed before Relators brought their suit, and
15  therefore was not "pending" under § 3730(b)(5).  Section
16  3730(b)(5) only applies while the initial complaint is pending.
17  United States ex rel. Chovanec v. Apria Healthcare Group, 606
18  F.3d 361, 365 (7th Cir. 2010) (holding that under § 3730(b)(5),
19  relator was entitled to bring a related complaint after earlier
20  actions were settled and no longer pending).  Because
21  § 3730(b)(5) only applies when the initial complaint is pending,
22  it is immaterial that Relators' complaint is "related" to the
23  fraud alleged in Hendow.

24       The purpose of the first-to-file provision is to encourage
25  whistleblowers to come forward, while at the same time,
26  discouraging opportunistic or parasitic lawsuits. Lujan, 243 F.3d
27  at 1187 (citing United States ex rel. LaCorte v. SmithKline
28  Beecham Clinical Lab., Inc., 149 F.3d 227, 233-34 (3d Cir. 1998)).

9

1  Using the first-to-file rule to bar whistleblower suits that
2  allege new fraud perpetrated by a wrongdoer after completion of a
3  previous suit would thwart the statute's purpose to encourage
4  whistleblowers to come forward.  UOPX's argument would bar any
5  qui tam lawsuits against a defendant who had previously been
6  involved in a fraud action as long as the previous fraud was
7  related to the subsequent fraud.  This contention, however, taken
8  to its logical conclusion, could produce an absurd result. In
9  short, actors committing fraud would be better off perpetrating a
10 related fraud instead of finding novel ways to defraud the
11 government.  Further, if Relators' allegations are true, and UOPX
12 is perpetrating a fraud similar to the fraud that it previously
13 perpetrated against the government, then there is nothing either
14 opportunistic or parasitic about bringing this suit.

15

16             **2.   Relators are not barred from bringing suit under
                      § 3730(e)(4)(A) because they are "original
17                    sources" under § 3730(e)(4)(B).**

18

19       According to § 3730(e)(4)(A), qui tam litigants cannot bring
20 a suit "if substantially the same allegations or transactions as
21 alleged in the action or claim were publicly disclosed...
22 unless...the person bringing the action is an original source of
23 the information."  Original source is defined in § 3730(e)(4)(B)
24 as an individual who "has knowledge that is independent of and
25 materially adds to the publicly disclosed allegations or
26 transactions..."
27 ///
28 ///

1   Here, Relators allege that while UOPX has ostensibly changed its

2   procedures to comply with federal regulations, they have

3   knowledge that UOPX has continued to perpetrate a fraud on the

4   government even after the <u>Hendow</u> case was completed.  If, as

5   Relators allege, the new procedures cover up a continuation of

6   the previous fraud, then Relators have provided information that

7   is independent of and materially adds to the information publicly

8   disclosed during the <u>Hendow</u> case, and could potentially lead to a

9   return of misappropriated funds.

10       The public disclosure bar in § 3730(e)(4) is not meant to

11  bar all actions based on information already in the government's

12  possession.  <u>Graham County Soil & Water Conservation Dist. v.</u>

13  <u>U.S. ex rel. Wilson</u>, 130 S. Ct. 1396, 1407 (2010) (noting that a

14  total bar on qui tam actions based on information already in the

15  Government's possession thwarted a significant number of

16  potentially valuable claims).  In the instant case, the

17  government may be aware of previous fraud committed by UOPX, and

18  disclosed in <u>Hendow</u>, but that knowledge does not bar other

19  potential qui tam litigants from bringing additional instances of

20  fraud to light.  Were UOPX's argument to be adopted, there would

21  be no qui tam remedy for subsequent violations of the FCA by the

22  same defendant when the government is aware of previous

23  wrongdoing.

24  ///

25  ///

26  ///

27  ///

28  ///

1  **B.   Relators' Claims Will Not Be Dismissed Pursuant to Rule 12(b)(6).**

2

3

4    UOPX argues that Relators' claim should be dismissed

5  pursuant to Rule 12(b)(6) because they fail to plead with the

6  particularity required by Rule 9(b), and they fail to satisfy the

7  plausibility standard of <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937

8  (2009).  UOPX also argues that Relators failed to plead specific

9  facts showing that UOPX's compensation practices fall outside of

10 the HEA's safe harbor provision.  (MTD at 3) (citing <u>United</u>

11 <u>States ex rel. Bott v. Silicon Valley Colleges</u>, 262 F. App'x.

12 810, 811-12 (9th Cir. 2008) ("Relators have not pled specific

13 facts supporting the inference that salary reviews were performed

14 solely on the basis of recruiting success.").  UOPX argues that

15 the "matrix" used to evaluate different performance indicators

16 was evidence that enrollment numbers were not the sole criteria.

17 (MTD at 3.)  Relators rely on <u>United States ex rel. Lee v.</u>

18 <u>Corinthian Colleges</u>, 655 F.3d 984, 993-94 (9th Cir. 2011), for

19 the proposition that "the mere inclusion of this performance

20 rating...does not allow us to conclusively determine whether its

21 method of awarding salary increases falls within the Safe Harbor

22 Provision."  For the following reasons, UOPX's motion to dismiss

23 is denied.

24 ///

25 ///

26 ///

27 ///

28 ///

1          **1.   Relators' Claims Satisfy Rule 9(b) Requirements**
               **that Fraud Claims Be Pled with Particularity.**

2

3

4          Rule 9(b) requires that, when fraud is alleged, a party must

5   state with particularity the circumstances constituting fraud..."

6   Fed. R. Civ. P. 9(b).  Averments of fraud must be accompanied by

7   the "who, what, when, where, and how of the misconduct charged."

8   <u>Vess v. Ciba-Geigy Corp., USA</u>, 317 F.3d 1097, 1106 (9th Cir.

9   2003). Any averments which do not meet that standard should be

10  disregarded for failure to satisfy Rule 9(b).  <u>Id.</u>

11         Here Relators meet their burden by naming individual

12  officers and employees of UOPX who have participated in the

13  fraudulent conduct, and detailing how the fraud was carried out.

14  Specifically, Relators claim, <u>inter alia</u>, that UOPX carries out

15  mock reviews in which counselors are told how many students they

16  must enroll to earn a salary increase. (SAC at 9.)  Counselors

17  were told that they could only keep a tuition reimbursement perk

18  if they met target enrollment numbers. (<u>Id.</u>)  Numerous UOPX

19  employees, including Enrollment Counselors, an Enrollment

20  Director, a Corporate Liaison Counselor, and a Student Support

21  Specialist all allegedly told Relator Hoggett that salary

22  increases were based solely on enrollment numbers. (<u>Id.</u>)

23  Relators argue that these facts show that UOPX knowingly creates

24  "fake or imaginary qualitative criteria" in the performance

25  evaluation matrix, while in actuality, the only criterion that

26  counts is enrollment numbers. (<u>Id.</u> at 8.)  The facts presented

27  in the Second Amended Complaint satisfy the particularity

28  required by Rule 9(b) to allege fraud.

1          **2.   Relators' Claims Meet the Plausibility Standard**
                **Required to Survive a Motion to Dismiss, and Are**
2               **Not Barred by the HEA's Safe Harbor Provision.**

3

4          As stated above, Relators have satisfied their burden of

5   pleading facts that are both particular and plausible. In order

6   to receive federal student financial aid funds under the HEA,

7   institutions must certify acceptance of the Program Participation

8   Agreement ("PPA"), which states that the institution:

9          [w]ill not provide any commission, bonus, or other
           incentive payment based in any part, directly or
10         indirectly, upon success in securing enrollments or the
           award of financial aid, to any person or entity who is
11         engaged in any student recruitment or admission
           activity, or in making decisions regarding the award of
12         title IV, HEA program funds." 34 C.F.R.
           § 668.14(b)(22)(I).
13

14  There is, however, a safe harbor provision which states that

15  participating institutions may make semi-annual salary

16  adjustments as long as they are not "based solely on the number

17  of students recruited, admitted, enrolled, or awarded financial

18  aid." § 668.14(b)(22)(ii)(A).[4]  UOPX's argument that the mere

19  inclusion of qualitative criteria on a performance evaluation

20  form demonstrates conclusively that they did not violate the PPA

21  is unpersuasive.  If the criteria are not actually used to make

22  compensation decisions, and are only included to give the

23  illusion of compliance with the PPA, then UOPX's conduct falls

24  outside the safe harbor provision.

25  ///

26  ///

27  ─────────────────

28       [4] Eliminated in 2011, but in place during the period
    encompassed by the Complaint.

                                    14

1   It is UOPX's "implementation of its policy, rather than the

2   written policy itself, that bears scrutiny under the HEA, and

3   such allegations would require additional discovery."

4   Corinthian, 655 F.3d at 996.  The Second Amended Complaint

5   satisfies the "facially plausible" requirement of Iqbal because

6   the facts alleged allow the Court to draw a reasonable inference

7   that UOPX is liable for violating the FCA.  See Ashcroft v.

8   Iqbal, 129 S. Ct. 1937, 1940 (2009).

9

10         **C.    Relators' State Law Claims Are Not Barred by the**
               **Statute of Limitations.**

11

12

13         UOPX's last argument for dismissing Relators' claims is that

14  the CFCA claims are barred by the statute's three-year

15  limitations period.  (MTD at 3) (citing Cal. Gov. Code 12654(a)).

16  Alternately, UOPX argues that state claims should be thrown out

17  because California law explicitly allowed recruiter payments

18  based on enrollment numbers for a brief period between

19  approximately 2002 and the time it was repealed in 2007.  (Id.)

20  (citing Cal. Educ. Code § 94832(e) (2002)).  Finally, UOPX

21  requests that if the Federal claims are dismissed, the Court

22  should decline to exercise supplemental jurisdiction over the

23  state law claims. (Id. at 3-4.)

24         The Court declines to dismiss Relators' Federal claims, and

25  will therefore exercise supplemental jurisdiction over the state

26  law claims.  28 U.S.C. § 1367(c).  There is no reason to infer as

27  a matter of law that California officials were put on notice, for

28  purposes of the statute of limitations, by the Hendow action.

15

1   Further, even if California law affirmatively allowed recruiter

2   payment based on enrollment for a portion of the period that

3   Relators allege the fraud occurred, that does not justify

4   dismissing Relators' claims in their entirety at the pleading

5   phase, as advocated by UOPX.

6

7                              **CONCLUSION**

8

9        For the reasons set forth above, UOPX's Motion to Dismiss

10  (ECF No. 37) is DENIED.

11   Dated: July 5, 2012

12

13   _____

14   MORRISON C. ENGLAND, JR.
     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28