1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  UNITED STATES OF AMERICA and<br>STATE OF CALIFORNIA, ex rel.<br>12  DEREK HOGGETT and TAVIS GOOD, | No.  2:10-cv-02478-MCE-KJN |
| 13                          Plaintiffs, | **MEMORANDUM AND ORDER** |
| 14          v. | |
| 15  UNIVERSITY OF PHOENIX, APOLLO<br>GROUP, INC., and DOES 1 through<br>16  100, inclusive, | |
| 17                          Defendants. | |

18

19          Relator Plaintiffs Derek Hoggett and Tavis Good ("Relators") bring a qui tam

20   action[1] against University of Phoenix and Apollo Group, Inc. under the False Claims Act,

21   31 U.S.C. §§ 3729-3733 ("FCA") and its California counterpart, Government Code

22   sections 12650-12656 ("CFCA").  Relators are former admission counselors for the

23   University of Phoenix, a for-profit post-secondary education institution, and a subsidiary

24   of Defendant Apollo Group (collectively "UOPX").

25          _____

26          [1] A qui tam action is brought by private litigants against a person or company that has allegedly
violated the law in the performance of a contract with the Government, or in violation of a governmental
regulation.  Qui tam suits are brought for the Government's benefit as well as for the plaintiffs.  The
27   Government may elect to intervene and proceed with the action within sixty days after it receives both the
complaint and the material evidence and information, or it may decline to take over the action, in which
case the person bringing the action shall have the right to conduct the action.  A "relator" is the individual
28   who relates the facts on which a qui tam action is based.  See generally 31 U.S.C. § 3730.

1  Relators allege that UOPX submitted false claims for federal student financial aid funds

2  to the United States Department of Education pursuant to the Higher Education Act, Title

3  IV ("HEA") from at least December 12, 2009 to the present.

4         On July 5, 2012, this Court issued its Order denying Defendants' Motion to

5  Dismiss.  (July 6, 2012, ECF No. 42.)  In denying the Motion, this Court ruled on two

6  threshold jurisdictional issues: (1) whether a previously dismissed action may

7  nevertheless be "pending" for purposes of the first-to-file bar under 31 U.S.C.

8  § 3730(b)(5); and (2) whether a relator that alerts the government to the alleged

9  continuation of fraud that was already known to the government as an "original source"

10  for the purposes of the public disclosure bar under 31 U.S.C. § 3730(e)(4).  (Id.)  This

11  Court held that the Relators are not barred from bringing suit under § 3730(b)(5)

12  because the previous suit was not pending.  (See id. at 8.)  This Court also held that

13  Relators are not barred from bringing suit under § 3730(e)(4)(A) because they are

14  "original sources" under § 3730(e)(4)(B).  (See id. at 10.)

15         Defendants subsequently filed a Motion for Certification of Interlocutory

16  Appealability under 28 U.S.C. § 1292(b).  (Defs.' Mot. Certification Interlocutory

17  Appealability, August 8, 2012, ECF No. 44.)  That Motion, which is now before the Court,

18  asks that the court certify for immediate appeal its decision denying dismissal on

19  grounds that both questions ruled on by the Court in its July 5, 2012 Order "present

20  controlling questions of law as to which there is a substantial ground for difference of

21  opinion" and involves circumstances where "the resolution of which will materially

22  advance the ultimate disposition of the litigation."  (Id. at 2.)

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

<strong>BACKGROUND</strong>[2]

2

3        Relators allege that UOPX, despite its settlement of earlier charges in 2009, in

4  fact continues to violate HEA's prohibition against awarding incentive payments to

5  recruiters based solely on enrollment numbers.  (ECF No. 36 at 2.)  By knowingly or

6  recklessly submitting false representations of compliance with requests for HEA or

7  California student financial aid funds, Relators claim that UOPX violated FCA

8  §§ 3729(a)(1) and (a)(2), and CFCA sections 12561(a)(1) and 12651(a)(2).  (Id.)

9        Relators allege that from at least December 12, 2009, UOPX has fraudulently

10  asserted that it "had not paid to any persons or entities any commission, bonus, or other

11  incentive payment based directly or indirectly on success in securing enrollments . . . for

12  each year at issue."  (Id. at 6.)  Relators contend that although UOPX disguises its

13  compensation practices with a "matrix" that lists non-enrollment criteria for performance

14  evaluation, in practice, enrollment numbers are the sole factor in determining promotion,

15  salaries and bonuses.  (Id. at 6-7.)

16        Relators further allege that this conduct was not deterred or altered by the

17  settlement in United States ex rel. Hendow v. University of Phoenix, No. 2:03-cv-0457-

18  GEB-DAD (E.D. Cal.), and that the fraudulent activities continued with the knowledge

19  and support of UOPX compliance officials.  (See ECF No. 36 at 6-7.)  Relators claim that

20  they were told to destroy documents related to training and recruitment and were also

21  told that there were no plans to change the old policies.  (See id. at 9-11.)  Relators

22  allege that despite the performance matrix, UOPX continues to "stack rank" counselors

23  based on their number of enrollments and use that ranking to determine compensation.

24  (Id. at 11.)

25  ///

26  ///

27        _____

[2] Unless otherwise noted, all factual background information is taken from the factual allegations in
28  the Second Amended Complaint.  (Second Amended Complaint ("SAC"), October 22, 2011, ECF No. 36 at
2.)

3

1  Further, according to Relators, UOPX continues to publish separate documents showing

2  a salary range aligned with each performance rating from the matrix, so that a counselor

3  can determine his or her salary range based on their enrollment levels.  (Id.)  Finally,

4  Relators detail numerous occasions when UOPX officials and employees told Relators

5  directly that compensation decisions are based solely on enrollment numbers.  (Id. at 9.)

6  Relators argue that these facts, and others alleged in the SAC, show that UOPX

7  knowingly bases recruiter compensation on enrollment numbers, while trying to disguise

8  this illicit behavior with a misleading performance evaluation matrix, all in violation of the

9  FCA and CFCA.

10

11                                          **STANDARD**

12

13       Certification of Interlocutory Appealability requires the fulfillment of two statutory

14  prongs.  First, the order must involve a controlling question of law as to which there is

15  substantial ground for difference of opinion.  28 U.S.C. § 1292(b).  Second, granting

16  immediate appeal from the order must materially advance the ultimate termination of the

17  litigation.  (Id.)  The Ninth Circuit has stated that resort to immediate appeal under

18  § 1292(b) should be used only in "exceptional situations in which allowing an

19  interlocutory appeal would avoid protracted and expensive litigation."  In re Cement

20  Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982).  Instead, interlocutory appeal should

21  be "applied sparingly."  Id.  In order to justify the appellate shortcut represented by

22  interlocutory appeal, its proponent has the burden to show that "exceptional

23  circumstances justify a departure from the basic policy of postponing appellate review

24  until after the entry of a final judgment."  Coopers & Lybrand v. Livesay, 437 U.S. 463,

25  475 (1978).

26  ///

27  ///

28  ///

4

1          **ANALYSIS**

2

3          The Court does not believe that the prerequisites of § 1292 have been met in this

4   matter.  Neither question presented justifies the procedural deviation of permitting

5   immediate appeal, particularly given the high bar the Ninth Circuit has set for certification

6   of such an appeal before a case has otherwise been concluded.  The Court now turns to

7   the two previously determined issues upon which Defendants' request for interlocutory

8   appeal rests.

9

10          A.      **First-to-File Question**

11

12          The "first-to-file" rule of the FCA provides, "[w]hen a person brings [a qui tam

13   action] under this subsection, no person other than the Government may intervene or

14   bring a related action based on the facts underlying the <u>pending</u> action." 31 U.S.C.

15   § 3730(b)(5), (emphasis added).

16          Here, Relators' action was not precluded by any other pending litigation.  The

17   prior action against UOPX was settled on December 11, 2009, well before the instant

18   action was instituted on September 15, 2010.  At that time, <u>Hendow</u> was not "pending"

19   and therefore the first-to-file bar is plainly inapplicable.  (ECF No. 42 at 9.)

20          The Ninth Circuit has held that a preexisting but subsequently dismissed action

21   was a pending action for purposes of the federal False Claim Act's first-to-file rule.

22   <u>United States ex rel. Lujan v. Hughes Aircraft Co.</u>, 243 F.3d 1181, 1188 (9th Cir. 2001).

23   In <u>Lujan</u>, a previous claim (the so-called <u>Schumer</u> action) had been brought in 1989 and

24   plaintiff Lujan brought her action in 1992.

25   ///

26   ///

27   ///

28   ///

1   The Ninth Circuit held:

2

3          Even assuming that Schumer's whole action was dismissed
           in 1997, five years after Lujan filed her complaint, Schumer's
4          action should still be considered a "pending" action for
           purposes of § 3730(b)(5) because Schumer's action was
5          pending when Lujan brought her claim.  To hold that a later
           dismissed action was not a then-pending action would be
6          contrary to the plain language of the statute and the
           legislative intent.

7   Lujan, 243 F.3d at 1188 (quoting United States ex rel. Schumer v. Hughes Aircraft Co.,

8   63 F.3d 1512 (9th Cir. 1995).

9          Thus, at the time plaintiff Lujan commenced her action, the Schumer action was

10  still pending.  Despite the fact that the Schumer action subsequently was dismissed, the

11  Schumer action was extant at the time Lujan filed suit, and therefore the Schumer action

12  was a pending action for purposes of the first-to-file rule.  Here, in contrast, the Hendow

13  action already had been settled at the time the instant action was commenced.  Lujan

14  does not support UOPX's argument that the Hendow action should be construed as a

15  pending action for purposes of the first-to-file rule.  The settlement of fraud claims

16  against UOPX does not bar subsequent FCA claims against UPOX for any false claims

17  submitted thereafter.  United States ex rel. Whitten v. Cmty. Health Sys., Inc.,

18  575 F. Supp. 2d 1367, 1385-86 (S.D. Ga. 2008).

19         The Court does not believe that either prong of § 1292's test justifies the

20  procedural deviation of permitting immediate appeal of the first-to-file issue, particularly

21  given the high bar the Ninth Circuit has set for the certification of such an appeal before

22  a case has otherwise concluded.  First, Defendants have not established that there is

23  any controlling issue of law presented by the decision as to which there exists any

24  substantial ground for difference of opinion.  Because the Hendow action was not

25  pending at the time the instant action was commenced, Lujan does not apply to the facts

26  of this case.

27  ///

28  ///

6

1    Furthermore, <u>United States ex rel. Powell v. American InterContinental University, Inc.</u>,

2    No. 1:08-cv-2277-RWS, 2012 WL 2885336 (N.D. Ga. July 12, 2012), which UOPX relies

3    on, is factually distinguishable because the case dealt with identical violations.  <u>Id.</u> at

4    *23-24 (noting "[t]he ultimate facts at issue here and the improper conduct alleged [in the

5    prior cases] are exactly the same.").  In <u>Powell</u>, the prior qui tam suits had already put

6    the Government on notice of the fraud.  In the instant case, Relators allege that fraud

7    transpired <u>after</u> the settlement in <u>Hendow</u>.  (<u>See</u> <u>Powell</u> at 14-15.)

8           Perhaps even more significantly, the <u>Powell</u> case has no binding effect

9    whatsoever on this Court.  A decision of a federal district court judge is not binding

10   precedent in either a different judicial district, the same judicial district, or even upon the

11   same judge in a different case.  <u>Camreta v. Greene</u>, 131 S. Ct. 2020, 2033 n.7 (2011)

12   (citation omitted).  As such, the Court believes that interlocutory certification is not

13   appropriate since Ninth Circuit law as it applies to this question appears well-settled.

14   Additionally, certification of this issue would not ultimately advance the termination of this

15   litigation and would only serve to protract the current proceedings.

16

17           **B.**     **Public Disclosure Question**

18

19           Under § 3730(e)(4)(A), qui tam litigants cannot bring a suit "if substantially the

20   same allegations or transactions as alleged in the action or claim were publicly disclosed

21   . . . unless . . . the person bringing the action is an original source of the information."

22   Here, Relators allege that while UOPX has changed its procedures to comply with

23   federal regulations, they have knowledge that UOPX has continued to perpetrate a fraud

24   on the government even after the <u>Hendow</u> case.  (<u>See</u> ECF No. 36 at 6 (stating that

25   UOPX is in knowing violation of the HEA incentive compensation prohibition, and

26   continually has been so for at least since December 12, 2009).)

27   ///

28   ///

1    If, as Relators allege, the new procedures cover up a continuation of the previous fraud,

2    then Relators have provided information that is independent of the information publicly

3    disclosed during the Hendow case.

4         In response, UOPX claims that Relators must first disclose their action to the

5    Government before they may file a complaint with the Court.[3]  The authority cited by

6    UOPX does not apply to the case at hand, as the allegations made by Relators were not

7    publicly disclosed before the filing of their complaint.  Section 3730(e)(4)(A) requires a

8    court to "dismiss an action or claim under this section . . . if substantially the same

9    allegations or transactions as alleged in the action or claim were publicly disclosed . . .

10   unless . . . the person bringing the action is an original source of the information."  For

11   the purposes of § 3730(e)(4)(A), an "original source" is one who either:

12

13            (i)      Prior to a public disclosure under subsection (e)(4)(A),
                       has voluntarily disclosed to the Government the
14                     information on which allegations or transactions in a
                       claim are based, or (ii) who has knowledge that is
15                     independent of and materially adds to the publicly
                       disclosed allegations or transactions, and who has
16                     voluntarily provided the information to the Government
                       before filing an action under this section.

17   31 U.S.C. § 3730(e)(4)(B).

18        Relators allege that while UOPX has changed its procedures to comply with

19   federal regulations, they have knowledge that UOPX has continued to perpetrate a fraud

20   on the government after the Hendow case was completed.  If, as Relators contend, the

21   new procedures cover up a continuation of the previous fraud, then Relators have

22   provided information that is independent of and materially adds to the information

23   publicly disclosed during the Hendow case.

24   ///

25        _____
              [3] UOPX argues that the court's prior July 5, 2012 order did not address this argument. (ECF No.
26   44-1 at 8:10-13.)  In fact, however, the Defendants raised the issue only in their reply filed in support of the
     underlying motion.  Reply papers should be limited to matters raised in the opposition papers.  It is
27   therefore improper for the moving party to "shift gears" and introduce different legal arguments in the reply
     brief than presented in the moving papers.  See Lujan v. National Wildlife Federation, 497 U.S. 871,
     894-95 (1990).  The district court need not consider arguments raised for the first time in a reply brief.
28   Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

1    On September 15, 2010, before making any public disclosure of these new allegations,

2    Relators disclosed to the Government the information on which their allegations were

3    based when they filed their complaint with the Court.  (See Pls.' Comp., September 15,

4    2010, ECF No. 1)  The complaint was filed in camera and sealed from public disclosure

5    until May 26, 2011, while the Government decided whether to intervene in the action.

6    (See Order, May 26, 2010, ECF No. 9 (lifting the seal and allowing the Complaint to be

7    served upon UOPX).)   Therefore, Relators qualify as the first variant of an original

8    source under § 3730(e)(4)(B), and validly filed their in camera complaint

9    contemporaneously with the sharing of such information with the Government.

10          UOPX's claim that Relators can qualify only under the second variant of the

11   statute appears misplaced.  (See ECF No. 44-1 at 12.)  Despite UOPX's contentions,

12   Relators have met the first jurisdictional requirement for qualifying as an original source.

13   The alleged offenses could not be based upon the prior public disclosure of the offenses

14   in Hendow, as Relators base their claim on subsequent actions by UOPX.  This finding is

15   consistent with the text of § 3730(e)(4)(B), and does not present a question of law as to

16   which there is substantial ground for difference of opinion.  Certification of the public

17   disclosure question would therefore only serve to protract the current litigation.  The

18   Motion for Certificate of Appealability for this question is denied.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

9

**CONCLUSION**

Because neither prong that must be met under 28 U.S.C. § 1292(b) justifies interlocutory appeal in this matter, and because both prerequisites must be established before certification of such an appeal should issue, the present Motion for Certificate of Appealability is hereby DENIED.[4]

IT IS SO ORDERED.

Dated:    March 6, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE

---

[4] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).