DANIEL ROBERT BARTLEY, CA Bar No. 79586
4040 Civic Center Drive, Suite 200
San Rafael, CA  94903-4184
Telephone 415 898 4741  Fax 415 898 4841
Email DanielBartleyLaw@aol.com

SHARON GREEN, CA Bar No. 43392
5904 Vizzi Court
Las Vegas, NV  89131
Telephone 702 596 1931  Fax 702 385 4593
Email vertlaw@aol.com

Attorneys for Derek Hoggett and Tavis Good, Relators

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, *ex rel.* DEREK HOGGETT and TAVIS GOOD,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF PHOENIX, APOLLO GROUP, INC., and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. 2:10-CV-2478 MCE EFB<br><br>**RELATORS' POINTS AND AUTHORITIES IN OPPOSITION TO SECOND MOTION TO DISMISS**<br><br>Hearing Date:  January 9, 2014<br>Hearing Time:  2:00 P.M.<br>Judge:  Hon. Morrison C. England, Jr.<br>Courtroom:  7<br>Original Complaint:  September 15, 2010 |

**ARGUMENT**

**I.     THE UOPX MOTION MUST BE DENIED BECAUSE THE PUBLIC DISCLOSURE BAR IS NO LONGER JURISDICTIONAL AND THE MOTION DOES NOT COMPLY WITH RULE 56.**

The public disclosure provisions of the False Claims Act (FCA) were amended as part of the Patient Protection and Affordable Care Act, (PPACA) signed by the President on March 23, 2009.  The Act provides that "The amendments made by this section shall apply to taxable years beginning after December 31, 2009."  Pub.L. 111-148, Title X, § 10104(j)(2).  The PPACA

*U.S. ex rel. Hoggett v. U. of Phoenix*, # 2:10-CV-2478 MCE EFB  — P&A Opp 2nd Mot to Dismiss     -1-

1  amended FCA § 3730(e)(4)(A) by confining the public disclosure bar to federal criminal, civil, or
2  administrative hearings, federal reports and media reports.  State and administrative hearings, and
3  court filings no longer constitute public disclosures for purposes of the FCA.

4  These amendments also overturned the jurisdictional nature of the public disclosure bar
5  and original source exception.  Federal Courts may no longer dismiss a *qui tam* action based on
6  the public disclosure bar if the Government opposes such dismissal.  Since the Government
7  rather that the Courts can now make the final determination on whether the public disclosure of
8  information can bar a *qui tam* suit, the public disclosure bar is no longer jurisdictional, but has
9  been converted by Congress into an affirmative defense.

10  Congress also expanded the definition of "original source."  The original source exception
11  now includes anyone who has "knowledge that is independent of and materially adds to the
12  publicly disclosed allegations or transactions."  The 2010 amendments, which were in effect
13  before this action was filed, changed the public disclosure bar and original source exception -  §
14  3730(e)(4)(A) now reads:

15  "(A) The court shall dismiss an action or claim under this section, unless opposed by the
16  Government, if substantially the same allegations or transactions as alleged in the action
17  or claim were publicly disclosed --
18  (i) in a Federal criminal, civil, or administrative hearing in which the Government
19  or its agent is a party;
20  (ii) in a congressional, Government2 Accountability Office, or other Federal
21  report, hearing, audit, or investigation; or
22  (iii) from the news media, unless the action is brought by the Attorney General or
23  the person bringing the action is an original source of the information.
24  (B) For purposes of this paragraph, "original source" means an individual who either (i)
25  prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the
26  Government the information on which allegations or transactions in a claim are based, or

27

28  *U.S. ex rel. Hoggett v. U. of Phoenix*, # 2:10-CV-2478 MCE EFB  — P&A Opp 2nd Mot to Dismiss     -2-

  (ii) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section."

31 U.S.C. § 3730(e)(4) (2010).

  Accordingly, UOPX cannot now move to dismiss for lack of subject matter jurisdiction based on public disclosure, because Congress has changed the law.  The defendants are simply wrong when they assert that the standard of review applicable to this motion is lack of subject matter jurisdiction; they are effectively moving for summary judgment based on an affirmative defense and the motion should be denied because they have not met the requirements of Rule 56.

## II. THE UOPX MOTION TO DISMISS MUST BE DENIED BECAUSE THE FACTS PRESENTED IN THEIR EXHIBITS DO NOT AMOUNT TO A PUBLIC DISCLOSURE THAT UOPX WAS ENGAGED IN ILLEGAL INCENTIVE COMPENSATION PAYMENTS AFTER THE *HENDOW* SETTLEMENT

### A. If the Lack of Jurisdictional Subject Matter Hurdle Did Not Prevent Dismissal of this Action on Public Disclosure Grounds, the Facts Are an Insurmountable Obstacle.

  Reviewing the public disclosures about UOPX contained in UOPX Exhibits (all references to exhibits mean the exhibits submitted by UOPX in support of the Motion to Dismiss) disclose the following information:

  • For-profit schools are manipulating students into costly programs that don't benefit them;

  • Students are suffering from rising student loan debt loads;

  • For-profit schools engage in overly aggressive marketing;

  • Students admitted to for-profit schools are more likely to drop out, never get degrees and default on their loans;

- Recruiters at for-profit schools are pressured into enrolling unqualified students;
- The Apollo Group, which owns the for-profit University of Phoenix, derived 86 percent of its revenue from federal student aid last fiscal year (reported in 2010);
- For-profit schools are bringing in students who cannot succeed or graduate;
- For-profit schools will enroll pretty much anybody, homeless, or unemployed;
- Student loan debt is non-dischargeable in bankruptcy, and collectors will garnish your wages, intercept your tax refunds, sue you. You will become ineligible for federal employment or any other kind of federal benefit. Many states piggy-back those prohibitions. It can ruin you.
- For-profit schools cater to low-income, disadvantaged students whose tuition is paid by federal grants and loans;
- The University of Phoenix is, by far, the biggest of the for-profit colleges, with close to 500,000 students;
- UOPX, because it is so large and because it has been around so long, has had a tremendous influence on the rest of the for-profit sector;
- For-profits are bringing in students who cannot succeed or graduate, and are loading them with debt and then leaving them to flail;
- At University of Phoenix active-duty military personnel can earn an associate's degree, which typically takes 2 years of study, in 5 weeks;
- Enrollment in for-profit colleges has grown from about 365,000 students to almost 1.8 million in recent years, according to the GAO report;
- Congress will extend between $300 billion and $350 billion in next the 10 years under the Pell grant program for education grants;
- For-profits give out misinformation about academic programs, accreditation and transfer of credits and make false statements or misrepresentations about employment prospects and earnings potential;

\\\

*U.S. ex rel. Hoggett v. U. of Phoenix*, # 2:10-CV-2478 MCE EFB — P&A Opp 2nd Mot to Dismiss     -4-

1    • Potential students at for-profit schools are given no information about the amount of
2 debt that they may incur;
3    • When the students default on their loans, the taxpayers end up picking up the tab;
4    • UOPX President denied that the *Hendow* settlement meant they got caught, he said, it's
5 certainly proof that we weren't doing as well as we could;
6    • The University of Phoenix now says it is changing how recruiters are compensated;
7    • UOPX falsely represented to Melissa Dalmiers that after two years at UOPX she could
8 start teaching in Illinois;
9    • Senator Harkin said he thought inducements to recruit aggressively were coming from
10 company executives. "That doesn't come from some employee," he said. "That comes from the
11 top."
12    Amid all these specific disclosures there is a denial that the *Hendow* settlement represents
13 an admission that UOPX engaged in incentive compensation violations, but there is no disclosure
14 that after the *Hendow* settlement UOPX continued to engage in paying recruiters based on the
15 number of students enrolled.   It is simply factually untrue that the disclosures in the exhibits are
16 such that they would put the government on notice that UOPX was continuing to pay illegal
17 incentive compensation after the *Hendow* case was resolved.

19    **B.    Defendants Erroneously Argue that "Allegations Of Continuing Recruitment**
20           **And Compensation Violations Were Widely Reported Between The Hendow**
21           **Settlement And The Filing Of This Lawsuit"  (Defendants' Memo, Page 6 )**
22           **and that therefore Relator's Claim Was Publicly Disclosed Before the**
23           **Hoggett Complaint Was Filed.**

24    This argument, aside from being sleight of hand, is plainly wrong.  "Recruitment
25 Violations"  noxious as they may be, do not violate the incentive compensation ban, and are not
26 the subject of this false claims action.  The reports about "Compensation Violations" referred to

28 *U.S. ex rel. Hoggett v. U. of Phoenix*, # 2:10-CV-2478 MCE EFB   — P&A Opp 2nd Mot to Dismiss     -5-

in defendants' argument and exhibits are reports about or referring to the *Hendow* settlement, and this court has already ruled that the *Hendow* case was not a public disclosure of the claims in this case.

Approximately six months after the *Hendow* settlement, Senator Tom Harkin, Chairman of the Health, Education, Labor and Pensions Committee, held the Committee's first hearing about practices of the for-profit higher education industry on June 24, 2010. UOPX Exhibit 11 is an excerpt from the Hearing which generated some media attention, as reflected in UOPX Exhibits 7, 8, 9, 10 and 11.

Prior to the second hearing, (UOPX Exhibit 16 contains hearing excerpts) at the Senator's request, the Government Accounting Office (GAO) conducted an investigation of recruiting practices in the for-profit education industry. The committee held its second hearing, this one on recruiting practices, on August 4, 2010. (UOPX Exhibit 11.) And the GAO made a report on its findings. (UOPX Exhibit 17). The GAO had sent undercover investigators to 15 for-profit colleges posing as potential students. Recruiters at four of the schools engaged in fraudulent practices and recruiters at all 15 schools misrepresented or made questionable representations to the prospective students. The false and misleading statements were set out in the GAO report and were incendiary, ranging from representations that barbers could earn $150,000 to $250,000 a year to claims that student loans did not have to be repaid.

This second hearing of the Harkin committee got the media's attention in a big way. The conduct reported was outrageous, and most of it was new to the general public. The media firestorm that followed is reflected in Defense Exhibits 12, 13, 15, 18, 20 and 26.

The general tenor of the media reports was that the industry had been shown to be corrupt and need to be cleaned up. A typical summary is this portion of UOPX Exhibit 26:

> "Much of Harkin's motivation came from the findings of a Government Accountability Office 'secret shopper' investigation of recruiting practices for-profit campuses, the results of which -- including a powerful videotape visible below -- were

officially released at the start of the hearing. The probe identified "fraudulent, deceptive or otherwise questionable marketing practices" at all 15 institutions, and inducements to commit fraud on the Free Application for Federal Student Aid at four institutions. Coupled with a former recruiter's account of his experience on the job, the evidence presented at the hearing depicted an industry aggressively and universally going after 'leads' and 'starts' with the institutional objective of securing federal financial aid dollars.

"GAO's findings make it disturbingly clear that abuses in for-profit recruiting are not limited to a few rogue recruiters or even a few schools with lax oversight," Harkin said. The evidence was collected from some of the nation's largest for-profit colleges, including the University of Phoenix and Kaplan College."

Nothing in the GAO Report, or the hearing testimony at either hearing referred to incentive compensation. (Declaration of Sharon Green). Evidence leading to the conclusion that the for-profit education industry is rotten to the core did not disclose the worm at the base of the rose. All of the tales of misconduct and recruiting abuses did not inform the recipient of the information (a) that the root cause is violation of the incentive compensation ban- although a few commentators alluded to incentive compensation as a cause. Nor (b) did any report suggest that UOPX, in spite of having paid over $67 Million to settle *Hendow*, was still violating the incentive compensation ban. No specific wrongdoing was attributed to UOPX in any media report except the PBS interview with Melissa Dalmier, a UOPX student who had been falsely assured that she could teach in Illinois after two years study at UOPX. (UOPX Exhibit 18).

Many of these reports referred to the *Hendow* settlement, either directly, naming the case, or indirectly by referring to the fact UOPX had paid millions to settle claims about incentive compensation - but none of them suggested UOPX was still engaged in the practice of violating the incentive compensation ban. Indeed, the reports all infer otherwise, and where the company spokesmen are featured they deny that they **ever** did anything wrong. (UOPX Exhibits 18). The

1  claim that the Harkin hearings and the media reports publicly disclose that UOPX violated the
2  incentive compensation ban after the Hendow Settlement is clearly unsupported and wrong.
3  None of the materials cited give cause to dismiss this action.
4
5      **C.**     **"Disclosures in Other Litigation" Did Not Mention Violation of the Incentive**
6            **Compensation Ban and Do Not Qualify as Public Disclosures under the FCA**
7            **- 31 U.S.C. § 3730(e)(4) (2010).**
8      The PPACA amendments to the False Claims Act, specifically § 3730(e)(4)(A), state the
9  public disclosure bar only applies to federal criminal, civil, or administrative hearings and federal
10 reports and media reports.  The statute does not include within its defined scope allegations
11 contained in federal securities complaints.  UOPX Exhibit 21, the *Ger.* complaint, is irrelevant.
12 And if it were relevant it would have no effect as incentive compensation is not mentioned in the
13 complaint.
14     The media reports about the *Ger.* lawsuit and the Apollo 8-K (UOPX Exhibits 23, 24 and
15 25) do not mention e incentive compensation. (Declaration of Sharon Green).
16     The facts recited in the exhibits offered to prove there was a public disclosure of UOPX
17 illegal payments of incentive compensation after the *Hendow* settlement simply do not make any
18 such disclosure.  The motion should be denied for failure of proof.
19
20 **III.**     **RELATORS ARE ORIGINAL SOURCES;  EACH HAS KNOWLEDGE THAT IS**
21        **INDEPENDENT OF AND MATERIALLY ADDS TO PUBLICLY DISCLOSED**
22        **ALLEGATIONS AND RELATOR  HOGGETT VOLUNTARILY PROVIDED**
23        **MATERIAL INFORMATION TO THE  GOVERNMENT BEFORE FILING THIS**
24        **ACTION.**
25     UOPX arguments that neither Relator can qualify as an Original Source are equally
26 misguided.  As the applicable law now reads, a person qualifies as an original source if he or she
27
28 *U.S. ex rel. Hoggett v. U. of Phoenix*, # 2:10-CV-2478 MCE EFB  — P&A Opp 2nd Mot to Dismiss    -8-

has knowledge that is independent of and materially adds to the publicly disclosed allegations and has voluntarily provided the information to the Government before filing a False Claims action.  Relators' information was clearly independent of any public disclosure as it was gained during their employment by UOPX.  Their information was provided to Dale Hillard of the Department of Education by email from Relator Hoggett (UOPX Exhibit 28) long before this lawsuit was filed and Mr. Hillard confirmed that such information materially added to information known to the Department of Education.  (UOPX .Exhibit 28).

> As this court held in its July 5, 2012, Order:
>
> "If, as Relators allege, the new procedures cover up a continuation of the previous fraud, then Relators have provided information that is independent of and materially adds to the information publicly disclosed during the *Hendow* case and could potentially lead to a return of misappropriated funds. . . . In the instant case, the government may be aware of previous fraud committed by UOPX, and disclosed in *Hendow,* but that knowledge does not bar other potential qui tam litigants from bringing additional instances of fraud to light*.*" (Order, page 11, lines 5-9, 16-20)

UOPX, in this Second Motion to Dismiss has not presented any information which casts doubt on this finding.

The knowledge each relator had was gained during their employment as Enrollment Counselors at UOPX.  It was independent of anything published in the media or otherwise publicly disclosed.  Moreover it materially added to the publicly disclosed allegations about UOPX because no one, before the Relators, reported to the government that UOPX had not stopped violating the incentive compensation ban after the *Hendow* settlement..

Relator Hoggett reported UOPX's incentive compensation ban violation to Dale Hillard, Department of  Education, on October 13, 2009, following up on an earlier complaint. (UOPX Exhibit 28).   He sent his further complaint s to Hillard on April 20, 2010, saying in part, "I urge

\\\

1   the Department of Education to stop the University of Phoenix from rewarding and punishing
2   enrollment counselors based on the number of students they enroll."  (UOPX Exhibit 28, page
3   168.)
4        May 7, 2010,  Hillard replied, stating:   "Thank you again for the information you
5   provided over the past months. The well-written documents were sent at just the right time to
6   provide the group in Washington with the information they needed to push for changes in the
7   incentive compensation rules.
8   Wishing you the best,
9   Dale Hillard" (UOPX Exhibit 28, page 173)
10        Hoggett's comment may have been brief, but Mr. Hillard understood his meaning, and
11   thanked him for the information.  In Hillard's mind Relator Hoggett made a material contribu-
12   tion.  What basis is there to second guess the very agency who has the responsibility to act on
13   such information?
14        Relators qualify as Original Sources under the law, they provided information to the
15   Department of  Education before filing this action - information their contact at the Department
16   considered to be material - and there is no reason to reverse the court's initial determination that
17   they qualify as Original Sources for purposes of this action.  The Motion to Dismiss should be
18   denied on these grounds as well as the preceding bases.
19
20   **CONCLUSION**
21        The Motion to Dismiss should be denied because the public disclosure bar is no longer
22   jurisdictional and because the motion does not satisfy the requirements of Rule 56 sufficiently to
23   be considered as a motion for summary judgment.  The facts submitted in support of the motion
24   in the form of Exhibits 1 through 31 do not evidence public disclosure that UOPX continued to
25   pay illegal incentive compensation after the *Hendow* settlement which is an additional grounds to
26   deny the motion.  Finally, Relators have previously been held to qualify as Original Sources, and
27
28   *U.S. ex rel. Hoggett v. U. of Phoenix*, # 2:10-CV-2478 MCE EFB  — P&A Opp 2nd Mot to Dismiss    -10-

1 | nothing in support of the motion to dismiss serves to disturb this determination.  The motion
2 | should properly be denied in its entirety.
3 |
4 | Dated: December 26, 2013          SHARON GREEN and DANIEL BARTLEY
5 |                                   ATTORNEYS FOR RELATORS DEREK
6 |                                   HOGGETT AND TAVIS GOOD
7 |                                        */s/Sharon Green*
  |                              By:   _____
8 |                                   SHARON GREEN, .LAWYER
9 |
...
28 | *U.S. ex rel. Hoggett v. U. of Phoenix*, # 2:10-CV-2478 MCE EFB  — P&A Opp 2nd Mot to Dismiss   -11-

|   |   |
|---|---|
| 1 | **PROOF OF SERVICE** |

I declare I am employed in the County of Marin, State of California, by Daniel Robert Bartley Law Offices, 4040 Civic Center Drive, Suite 200, San Rafael, CA, 94903-4184. I certify that I am over the age of 18.

I hereby certify that on today's date, I electronically filed the foregoing **"RELATORS' POINTS AND AUTHORITIES IN OPPOSITION TO SECOND MOTION TO DISMISS"** with the Clerk of the United States District Court for the Eastern District of California by using the District Court's CM/ECF system.  I certify that all the counsel listed below are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

| | |
|---|---|
| Matthew G. Jacobs, Esq.<br>DLA PIPER LLP (US)<br>400 Capitol Mall, Suite 2400<br>Sacramento, CA  95814-4428<br>Tel 916 930-3200  •  Fax 916 930-3201<br>Email matt.jacobs@dlapiper.com | Jonathan C. Bunge, Esq., Leonid Feller, Esq., and Alec Solotorovsky<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Tel 312 862-2000  •  Fax 312 862-2200<br>Email Jbunge@kirkland.com |
| Jay D. Majors, Esq.<br>Civil Division - Fraud Section<br>Commercial Litigation Branch<br>U.S. Department of Justice<br>601 D Street, N.W.<br>Post Office Box 261, Ben Franklin Station<br>Washington, D.C. 20004<br>Tel 202 307 0264  •  Fax 202 514 0280<br>Email Jay.Majors@usDOJ.gov | Catherine Swann, Assistant U.S. Attorney<br>Office of the U.S. Attorney<br>Sacramento Federal Courthouse<br>501 " I " Street Suite 10-100<br>Sacramento, CA 95814<br>Tel 916 554-2700  •  Fax 916 554-2900<br>Email Catherine Swann@usdoj.gov |
| Rick Acker, Esq.<br>Deputy Attorney General<br>Office of State of California Attorney General<br>State of California Department of Justice<br>Office of the Attorney General<br>1300 "I" Street<br>P.O. Box 944255<br>Sacramento, CA 94244-2550<br>Tel 916 445-9555<br>Email Rick.Acker@doj.ca.gov | |

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed on this 26th day of December, 2014, in Novato, Marin County, California.

By: */s/ Daniel Robert Bartley*
      Daniel Robert Bartley

*U.S. ex rel. Hoggett v. U. of Phoenix*, # 2:10-CV-2478 MCE EFB  — P&A Opp 2nd Mot to Dismiss